## H. H. EELKEMA v. BOARD OF EDUCATION OF CITY OF DULUTH AND OTHERS.[1]

September 17, 1943.

No. 33,639.

[1]Reported in 11 N. W. (2d) 76.

*Fryberger, Fulton & Boyle,* for relator.

*McCabe, Gruber & Clure,* for respondents.

*R. S. Wiggin* and *Charles A. Sawyer* filed a brief *amicus curiae* on behalf of Board of Education of City of Minneapolis.

LORING, JUSTICE.

This case comes here on a writ of prohibition which the relator seeks to have made absolute. The question presented is whether relator has acquired tenure under the teachers tenure law. Minn. St. 1941, §§ 130.22 to 130.32 (Mason St. 1927, §§ 2935-1 to 2935-13). He was superintendent of schools of the independent school district of Duluth from August 1, 1936, until July 31, 1943, under two successive three-year contracts and a one-year contract. The school board of the district refuses to renew his contract or to continue his employment. He contends that the tenure law applies to the superintendent of schools in Duluth, that his employment has become continuous, and that he can only be removed from it for

cause under § 130.25 (§ 2935-6) and for the reasons therein stated.

The respondent district was organized as an independent school district by Sp. L. 1891, c. 312, which provided that the district should be governed by the general laws of the state relative to independent school districts, not inconsistent with the special act. Its boundaries now coincide with those of the city. It owns and operates 44 school buildings and their appurtenances and employs over 800 people.

The general laws of the state (L. 1877, c. 74, subchapter VII, § 6) then in force in regard to independent districts, provided for the election in such districts by the school board of a superintendent of schools,[2] who "shall hold his office during the pleasure of the board." The law provides that "the superintendent shall be *ex-officio* member of the board, but not entitled to vote therein." Among other things, it (§ 10) requires him to visit the schools of the district and report their condition to the board as often as they require. It also provides that he shall make recommendations to the board concerning the employment and dismissal of teachers.

In 1924 this court, in Jensen v. Independent Cons. Sch. Dist. 160 Minn. 233, 199 N. W. 911, held that the school board in such districts could not hire a superintendent of schools for a fixed term but that such superintendent could hold his position only during the pleasure of the board. By L. 1925, c. 124, the legislature permitted the board to "elect a superintendent" for not to exceed one year. This was later changed to three years by L. 1939, c. 61, which applied only to independent or special districts in cities of the first class, where the boundaries of the district coincided with those of the city.

L. 1927, c. 36, usually referred to as the "tenure act," provides that after a probationary period of three years teachers in cities of the first class shall continue to hold their positions during good behavior and may be removed only for certain specified causes, and

---

[2] To be distinguished from the county officer designated county superintendent of schools elected by the people.

after a hearing. Duluth is such a city and is the only one of the three cities of the first class which has an independent school district. The act is entitled:

"An act to regulate the employment of teachers in the public schools in cities of the first class and fixing the conditions under which they may hold their positions or may be discharged or may be demoted."

It defines the term "teacher" (§ 1) as including "every person regularly employed, as a principal, or to give instruction in a classroom, or *to superintend or supervise class-room instruction,* or as placement teacher and visiting teacher." (Italics supplied.) It is upon the phrase "to superintend or supervise class-room instruction" that relator, to a large extent, rests his contention.

■ At the time the tenure act was passed the designation "superintendent of schools" had grown to have a well defined meaning. Such superintendent in this state was universally the officer having the highest authority under the board of which he was in fact an ex-officio member and chief adviser. He was the board's business manager. Upon his coöperation and advice depended in great degree the success of the board's management of the schools. The board could determine policy but depended upon its superintendent to carry it out.

In 1932 the attorney general had ruled that the superintendent was not a teacher within the terms of the tenure act. That opinion, though not binding on the courts, was, by statute law, binding upon school officers until overruled by the courts. Minn. St. 1941, § 8.07 (Mason St. 1927, § 115). By L. 1941, c. 169, the legislature enacted a comprehensive school code and incorporated, as the teachers tenure act, art. X, §§ 22 to 32, inclusive, of that chapter with the same definition of "teacher" as that appearing in the 1927 act, interpreted by the attorney general as not to include a superintendent of schools. It is significant that in the provisions relative to certification of teachers as qualified for employment the same act

specifically refers in art. X, § 9, to "superintendent of schools." In § 2 it defines—

" 'teachers' for *the purposes of certification* shall mean and include any and all persons employed in a public school as members of the instructional and supervisory staff, such as superintendents, principals, supervisors, classroom teachers, and librarians" (Italics supplied)—

apparently naming them according to rank from the top down. The tenure act, in defining "teacher" for the purpose of providing continuous service after the probationary period, also enumerates its coverage starting with "principal." It does not use the designation "superintendent of schools." If the legislature had intended to include that position within the definition of "teacher" for the purpose of tenure, it naturally would have used that designation and would have placed it ahead of "principal" in the list of positions covered.

While the attorney general's opinion may not have the same controlling force in determining legislative intent that an opinion of this court would have where a law is reënacted in the same language after interpretation, nevertheless, where by law (Minn. St. 1941, § 8.07 [Mason St. 1927, § 115]) that opinion is binding on the officers affected and has not been reversed by the courts, we believe it should have great weight in determining the legislative intent of language which is subject to construction. We may readily assume that the legislature, having given the attorney general's opinion the force of law until reversed, intended the reënacted language to have the interpretation he had given it, if susceptible of that construction.

Our construction of the legislative intent of these provisions is that though the superintendent of schools is specifically included in the provisions for certification he is not covered by the tenure act. The word "superintend" as used in the phrase "superintend or supervise class-room instruction" in the tenure act is plainly used solely in connection with the phrase "class-room instruction" and

not with reference to the broad duties and responsibilities of a superintendent of schools. Its sense is very like that of "supervise," which follows it. A superintendent of schools may be said to superintend class-room instruction, but that is a small part of his duties and responsibilities. He would never be designated as a "superintendent of class-room instruction."

The legislative reason for omitting the superintendent of schools is quite obvious. What was said of the tenure act by this court in State ex rel. Ging v. Board of Education, 213 Minn. 550, 568, 7 N. W. (2d) 544, 555, is quite pertinent here:

"* * * The adoption of a liberal construction to combat the evils to which the law was directed does not permit a construction so benevolent toward teachers that, by eliminating one evil, we create another: that of transferring from the school boards, the duly elected representatives of the parents, taxpayers, and other electors of the school district, to the teachers and the courts the management, supervision, and control of our school systems vested in such boards by other statutes."

2. The character of the services of a superintendent of schools to the district and of his relations to the board is such that it should require a clear declaration of legislative intent to bring him within the continuous employment effected by the tenure act. As well said by this court in Jensen v. Independent Cons. Sch. Dist. 160 Minn. 233, 236, 199 N. W. 911, 913:

"* * * Moreover, a sound public policy requires that there should be a way of promptly dispensing with a superintendent who is not working in harmony with the board. The members of the board are the representatives of the people, and the power of control should rest with them. They are responsible for the results, and they properly are given the power to summarily release a superintendent."

This was the policy with which the legislature started. It has only modified it to the extent, first, of permitting a contract for one

year and then, in the Duluth district, to three years.  It has declared no intent to go further.  The board of education is within its powers in refusing to reëmploy the relator.

The writ of prohibition is discharged.