Ross, Appellee, *v.* Board of Education, Appellant.

(No. 35491—Decided March 24, 1977.)

*Mr. Ralph A. McAllister,* for appellee.
*Messrs. Squire, Sanders & Dempsey,* for appellant.

Corrigan, J. The appellee, Mrs. Irene Ross, was formerly an elementary school principal in the city of Euclid school system. Her one-year contract was not renewed for the 1975-1976 school year. The appellee, prior to her service as principal, had been employed many years as both a classroom teacher and as assistant principal in the Euclid school system. After the appellee was notified that her

contract for services as principal would not be renewed, and after some negotiation, she agreed to accept a position entitled Elementary Language Arts Supervisor. The new position carried with it a salary decrease. On July 25, 1975, the appellee filed suit in the Court of Common Pleas seeking injunctive, declaratory and monetary relief from the action of the Board of Education of the Euclid City School District.

After lengthy proceedings in the trial court, it was ordered that the appellee had acquired tenure as a principal, that she be reinstated to her position as principal, that she be awarded compensatory damages plus a merit increase, and that she be awarded punitive damages plus attorney fees. The appellant assigns the following errors on appeal:

"1. It was error to hold that a school principal has tenure.

"2. It was error not to hold that the plaintiff either waived her rights or was estopped to challenge the nonrenewal of her contract.

"3. It was error, absent tenure, for the trial court to exercise any jurisdiction to review the decision of the Board not to renew plaintiff's contract.

"4. It was error to hold that the Board 'abused its discretion' by determining not to renew plaintiff's contract as principal.

"5. The trial court erred in calculating compensatory damages.

"6. It was error to award punitive damages."

The errors assigned speak generally to the three issues of tenure, abuse of discretion and damages.

The rights and obligations of teachers, administrators, and school boards are set forth in Title 33 of the Ohio Revised Code. The code provides for two types of employment agreements between the board of education and the teacher. The first is a limited contract for a specified salary and time period. The second is a continuing service contract which remains in effect until the teacher resigns, elects to retire, reaches the age of seventy, or until the board terminates the agreement for cause. R. C. 3319.18.

Those teachers eligible for continuing employment

contracts must possess permanent or life certification, and must fulfill the service requirements of R. C. 3319.11. The appellee met the requirements for tenure as a classroom teacher and was entitled to a continuing service contract in that capacity. Mrs. Ross could not legitimately be refused employment as a classroom teacher unless the board followed the procedures and met the requirements set forth in R. C. 3319.16.

The appellee contends, however, that the statutory protection which she had acquired was that of tenure as a principal, and not merely as a classroom teacher. The trial court agreed with this position and granted the declaratory and monetary relief consistent with this finding. We hold that this finding was in error and reverse the judgment of the trial court.

The Supreme Court of Ohio has not specifically addressed or decided the issue of tenure as such concerns the position of principal. Some guidance may be gleaned from two early decisions dealing with tenure and the position of superintendent. The court denied a writ of mandamus to compel the issuance of a continuing contract for the position of superintendent, stating:

"In view of the facts that the position of superintendent of schools is a special position entailing large executive and discretionary powers, that, under the law, a person holding that position is not entitled to a contract exceeding five years in length, and that, in the present case, more than three-fourths of the members of the board rejected the proposition to give relator a continuing contract, and at its expiration, terminated the one under which he was serving, it seems to us that relator has not shown a clear legal right to the relief for which he prayed in his petition." *State, ex rel. Saltsman,* v. *Burton* (1950), 154 Ohio St. 262, at 270.

Two years later the Supreme Court again denied the same petitioner another writ of mandamus to compel his appointment to the administrative position of elementary supervisor. *State, ex rel. Saltsman,* v. *Burton* (1952), 156 Ohio St. 537.

The appellant seeks to stretch the meaning and context of the language in *Saltsman II, supra,* to cover the is-

sue in the present case. The issue has not heretofore been definitely decided, although we do find the logical distinction drawn between executive, administrative, and supervisory positions and those of classroom teachers to be the appropriate grounds for limiting the application of tenure in this case.

The appellee contends that the term "principal" is merely an abbreviation for "principal teacher," and that the definition of teacher in R. C. 3319.09(A) includes one certified to teach who is employed as a principal. This argument was rejected in *Saltsman I, supra,* and is inconsistent with the commonly understood role of principal and with the general job description contained in the Policy Manual of the Euclid Public Schools, at Section 326.1.

"326.1 *Principals (line position)*

Principals shall be completely responsible for the program, plant, budget, equipment, supplies, pupil and teacher personnel, school accounts, district-community relationships and the auxiliary personnel. Elementary principals are responsible immediately to the Assistant Superintendent—Elementary Education. Secondary Principals are responsible immediately to the Assistant Superintendent-Secondary Education. Principals then are responsible through their divisions to the Superintendent of Schools. The Superintendent delegates to the Assistant Superintendents of Secondary and Elementary Education and principals, authority and responsibility for the administration and supervision of a particular school within the bounds of Ohio School Law, Board policy and such administrative and instructional policies as are developed systemwide and approved by the Superintendent."

The job description emphasizes and provides for executive and administrative tasks with discretionary powers to be the primary function of a principal.

The policy manual does not include any reference to direct teaching responsibilities for the position of principal. Whatever the historic evolution of the position may have been, it is now clear that the job responsibilities of principals entail duties quite apart from direct classroom didactics.

In *Saltsman I, supra,* the Supreme Court explained the rationale for teacher tenure as, in part, a protection against dismissals which might otherwise arise from political or personnel changes in a board of education. The attempt to secure classroom teaching positions from the personal whims or political expediency of a board has been likened to a civil service classification. *State, ex rel. Bishop,* v. *Bd. of Education* (1942), 139 Ohio St. 427. In some respects the analogy is apt. A teacher must meet objective educational requirements both upon entry and in order to continue in the system. A schedule of salary adjustments is geared to provide guaranteed credit for continuing education and for years of teaching experience. The administrators of the civil service system, as well as the elected and appointed officials of the education system, utilize certain objective criteria which are set forth to map out the course of advancement within the field. As with most analogies, however, the farther one searches for similarities, the greater the danger of distortion. The advancement of a classroom teacher to the administrative position of principal is not like a civil service promotion. A step increase or grade promotion within the civil service system will ideally flow from a measurable degree of work excellence. A board of education would certainly weigh heavily the work quality of an administrative job candidate. The board, however, is given greater latitude to select those individuals who can best carry out the administrative functions and who can implement its educational policies.

The first assignment claiming that it was error to hold that a school principal has tenure in that position is well taken.

The appellee does retain, under the provisions of the Teacher Tenure Act, her protection as a classroom teacher. In order to discontinue all employment relationships between her and the school board, the provisions of R. C. 3319.16 must be followed. Since the appellee acquired no rights to "tenure as a principal," the acceptance of another administrative position could not constitute a waiver. The school board had full authority to replace or retain

its administrative staff. The appellee here chose to accept a position as supervisor of language arts, rather than return to a position as a classroom teacher. The record contains no indication that the acceptance of this position was conditioned upon an agreement whereby the appellee would refrain from asserting the present claim for tenure as a principal.

Since the appellee does not have tenure as a principal, and since her yearly contract for that position was not renewed, the provisions for transfer during the life of a contract do not apply. R. C. 3319.12. The school board, through the superintendent, gave notice to the appellee, prior to April 30th, that her contract would not be renewed. The notice was therefore timely and avoided an automatic renewal of the contract. R. C. 3319.12 and 3319.16. The appellee did not acquire tenure in her position as principal, and both parties were thus free to negotiate a contract for whatever administrative position or teaching position met their respective needs.

The second assignment of error is overruled.

The voluminous record in this case reveals that the action taken by the school board to relieve the appellee of her duties as principal may have been influenced by factors other than a concern for expertise in providing quality education. The motives for not reviewing the appellee's contract, which were disclosed in the fifteen hundred page transcript, often reflected personal vindictiveness and, in several instances, rested upon unsupported accusations. While this court cannot condone the actions or procedures followed by the board, neither can it interfere in a decision-making process which is relegated wholly to the authority of that board. R. C. 3313.47. The school board is an elected body which is charged with implementing and carrying out the educational responsibilities of the community. The courts are not the proper forum in which to redress a grievance which stems from the exercise of discretion by an elected body. The final accountability in this instance should be left with the electorate.

Since the protective tenure statutes did not apply to

the appellee in her position as principal, there was no requirement to hold a hearing or to specify the reason for the non-renewal of her contract. The decision of the board was unanimous. Absent a claim that the school board violated a statutory or constitutional obligation by depriving the appellee of a vested right, or engaging in impermissible discriminatory conduct, the trial court may not substitute its judgment for that of the board. *Cf. Mt. Healthy City School Dist. Bd. of Education* v. *Doyle* (1977), 429 U. S. 274. The third and fourth assignments of error are well taken.

The Teacher Tenure Act provides for a judicial review of board action when a continuing service contract is terminated. R. C. 3319.16. In an action where the petitioner can demonstrate that the board failed to meet its statutory obligations, reinstatement and compensatory damages may be ordered.

The appellee was without tenure as a principal and therefore was not entitled to any of the relief requested in the complaint. Once her one-year contract for principal expired, she and the board were free to negotiate a contract for a different administrative position with a new salary. The salary and any merit increase awarded were to be determined within the discretion of the board. No compensatory damages should have been awarded, since the appellee suffered no legally cognizable injury under R. C. 3319 *et seq.*

Furthermore, no punitive damages were recoverable. The recent enactment which established the Court of Claims and provided that the state may be sued as if it were a private citizen did not extend the waiver of sovereign immunity to political subdivisions such as school boards. R. C. 2743.01, 2743.02(A).

The judgment of the lower court is reversed. Judgment entered for appellant.

*Judgment reversed.*

KRENZLER and PATTON, JJ., concur.