691 P.2d 1223 (1984)
107 Idaho 608
Sandra L. BAKER, Randa L. George, Sue Gunter, Juanita A. Eaton, William R. Fahringer, Lana P. Hoch, Lynn D. Hyslop, Kathleen M. Koskella, Jean L. Nutile, Patsy L. Panko, Wayne D. Rexford, Michael D. Ryals, Francis Richard White and Coleen M. Whitsell, Plaintiffs-Appellants,
v.
INDEPENDENT SCHOOL DISTRICT OF EMMETT, NO. 221; R. Lynn Gurney, Marilyn Root, Sharon D. Church, Margie Schmidt, Robert Tyler and Jack King, the members of the Board of Trustees of Independent School District of Emmett, No. 221; and Richard H. Morton, Superintendent of Independent School District of Emmett, No. 221, Defendants-Respondents.
Dave TANNER and Preston Prawitz, Plaintiffs-Appellants,
v.
INDEPENDENT SCHOOL DISTRICT OF EMMETT, NO. 221; R. Lynn Gurney, Marilyn Root, Sharon D. Church, Margie Schmidt, Robert Tyler and Jack King, the members of the Board of Trustees of Independent School District of Emmett, No. 221; and Richard H. Morton, Superintendent of Independent School District of Emmett, No. 221, Defendants-Respondents.
No. 15084.
Supreme Court of Idaho.
December 6, 1984.
*1224 Byron J. Johnson, Boise, for plaintiffs-appellants.
Cumer L. Green, Boise, for defendants-respondents.
DONALDSON, Chief Justice.
Summary judgment was granted to respondents (the District) on the record which consisted of the pleadings, affidavits and exhibits. Viewed most favorably to the appellants (the Teachers), the record discloses the following facts.
During the winter of 1983, the Independent School District of Emmett, Idaho, was faced with decreasing enrollment and a corresponding reduction in funding. On February 7, 1983, the school board, at a properly noticed special meeting which was open to the public, directed the school district administration to study the present needs and resources of the district and present findings that a reduction in force was needed and appropriate. The board also directed the administration to develop standards for implementing a reduction in force (RIF) which would provide the highest quality of education to the students of the district and guarantee teacher's rights. The administration was to present its findings and recommendations to the board by March 10, 1983.
On March 7, 1983, at a properly noticed special meeting open to the public, the board, after discussion of the proposed policy, unanimously adopted the RIF policy. Under this policy, the board was authorized to non-renew, without a probationary period, the contract of any certificated professional employee, including those who had obtained renewable contract status. Renewable contract status occurs after three years of continuous employment by the same school district and confers a limited statutory right to automatic contract renewal.
On March 10, 1983, a properly noticed special public meeting was again held. At that meeting, the board heard statements from 34 persons regarding the policy and indicated that they would accept written comments pertaining to the implementation of the RIF policy until March 17, 1983. The March 10th meeting was then recessed until March 21, 1983, at 7:00 p.m.
On March 14, 1983, the board held its regular public meeting. Following the meeting, the board announced that it would re-convene into open session on March 21, at 7:00 p.m. and then adjourned into executive session.
On March 21, at 6:00 p.m. the board met in executive session to discuss the progress of a task force selected to recommend personnel for non-renewal if the RIF policy was implemented. At 6:50 p.m., the board adjourned from that session into the 7:00 p.m. open session. At the public session, the board unanimously resolved to implement the RIF policy. The resolution indicated that the board had reviewed the written statements and documents received. It also directed the superintendent to implement the RIF procedures and to make recommendations to the board concerning curriculum changes and possible contract renewals. The chairman of the board then announced that the curriculum changes proposed pursuant to the RIF policy would be made available on Friday, March 25, 1983, at the public library and at the school administration office. The chairman also announced a special meeting on March 28, *1225 1983, at 7:00 p.m. to hear comments from the public and others on the proposed curriculum changes. The chairman further announced a special meeting to be held on March 30, 1983, to receive and decide upon the superintendent's recommendation with respect to those professional employees that would be subject to reduction in force procedures.
The Teachers are certificated employees of the district and were all employed during the 1981-1982 and 1982-1983 school years on renewable contracts. One of the provisions in the individual contracts signed by each of the Teachers for the 1981-1982 and 1982-1983 school years contained a provision stating that it was understood and agreed that the contract was subject to the applicable laws of the state of Idaho.
As it existed prior to March 17, 1982, I.C. § 33-1212 (1981) (current version at I.C. § 33-515 (Supp. 1984)) contained the following provision:
"Before a board of trustees can determine not to renew the contract of any certificated person whose contract would otherwise be automatically renewed, or to renew the contract of any such person at a reduced salary, such person shall be entitled to a probationary period. This period of probation shall be proceeded by a written notice from the board of trustees with reasons for such probationary period and with provisions for adequate supervision and evaluation of the person's performance during the probationary period. Such period of probation shall not affect the person's renewable contract status."
On March 17, 1982, the legislature of the state of Idaho amended I.C. § 33-1212 by adding the following provision:
"If the board of trustees, for reasons other than unsatisfactory service, ... determines ... not to renew the contract of a certificated person whose contract would otherwise be automatically renewed, nothing herein shall require a probationary period."
The modification was made immediately effective by an emergency clause.
The Teachers filed suit in district court for injunctive and declaratory relief to prevent the District from completing the required administrative process, that might result in the non-renewing of their contracts, until the Teachers had the benefit of a probationary period. Upon motions for a preliminary injunction by the Teachers and for summary judgment by the District, the trial court found that there was no genuine issue of material fact and granted summary judgment to the District as a matter of law. The Teachers now appeal that decision. The judgment of the district court is affirmed.
Three major issues are presented by this appeal:
1. Was the March 21, 1983, 6:00 p.m. executive session a violation of the Open Meeting Law,[1] and if so, does that violation taint action taken by the District at the 7:00 p.m. open meeting?
2. Does the March 17, 1982 amendment to I.C. § 33-1212 apply to the teacher's renewable contracts?
3. If the 1982 amendment to I.C. § 33-1212 does apply to the teacher's contracts, were their contracts not renewed for reasons other than unsatisfactory service?
Each issue will be discussed in turn.

I.
The Teachers argue that viewed in the light most favorable to the Teachers, the facts create an inference that the District had arrived at a secret, binding decision during their 6:00 p.m., March 21, 1983 meeting and merely emerged to public view to enter the ceremonial, pro forma decision at the 7:00 p.m. open meeting. They argue that the 6:00 p.m. executive session was in violation of the Open Meetings Act. Therefore, they conclude that the decision by the District to implement the RIF policy should be null and void.
*1226 Violations of the Open Meetings Law are governed by I.C. § 67-2347. That section provides that "[a]ny action taken at any meeting which fails to comply with the provisions of §§ 67-2340 through 67-2346, Idaho Code, shall be null and void."[2] In State v. City of Hailey, 102 Idaho 511, 633 P.2d 576 (1981), we held
"[w]here deliberations are conducted at a meeting violative of the Open Meetings Act but no firm and final decision is rendered upon the questions then discussed, the impropriety of that meeting will not taint final actions subsequently taken upon questions conscientiously considered at subsequent meetings which do comply with the provisions of the Act."
Id. at 514, 633 P.2d at 579.
Assuming arguendo that the 6:00 p.m. meeting on March 21st was in violation of the Open Meetings Act, State v. Hailey is dispositive as a matter of law. The only meeting subsequent to the 6 p.m. executive session was the meeting at which the District voted to implement the RIF policy. However, "[t]his is not a case where a public body arrived at a secret, binding decision in closed session, later reemerging to public view to enter a ceremonial, pro forma final decision." Id. at 513, 633 P.2d at 578. A review of the record shows that prior to their decision, the District conducted several open meetings during which the RIF policy was presented, discussed, and debated. The District heard considerable public input and rendered its final decision in open public session. There was absolutely no evidence of sham or deception on the District's part nor was there evidence that a final decision was reached in secret. The District demonstrated a sincere, open and honest attempt to resolve a delicate and controversial problem. Considering the proceedings as a whole, it appears that the District conscientiously attempted to comply with the requirements and spirit of the Open Meetings Act. Thus, we conclude the District's decision to implement the RIF policy may stand.

II.
The Teachers additionally contend that I.C. § 33-1212 as amended on March 17, 1982 does not apply to their contracts.
This Court has held that "it is axiomatic that extant law is written into and made a part of every contract." Robinson v. Joint Sch.Dist. # 150, 100 Idaho 263, 265, 596 P.2d 436, 438 (1979). This is especially true in this case because the Teachers' contracts with the District state that they are "subject to the applicable laws of the state of Idaho ... which are, by reference, incorporated herein and made part of this agreement, the same as if fully set forth." Since, I.C. § 33-1212 was amended and effective on March 17, 1982, and the Teachers entered into their contracts for the 1982-1983 school year on May 6, 1982, I.C. § 33-1212 was extant law on the date the Teachers entered into their contracts. Therefore, I.C. § 33-1212 as amended on March 17, 1982 applies to the Teachers' 1982-1983 contracts.
The Teachers argue that the Idaho law in effect when the Teachers reached renewable contract status remains the law applicable to their contracts. Since the Teachers all reached renewable contract status before the March 17, 1982 amendment to I.C. § 33-1212 they reason that it does not apply to them. They argue that I.C. § 33-1212, as it was prior to that date applies.[3]
However, I.C. § 33-1212, as it stood before and after the 1982 amendment, contemplates separate contracts for each school year for every teacher. I.C. § 33-513(1) mandates that a separate written contract be tendered to each teacher for each school year and that this document be returned to the school board signed, within ten days of its tender. Finally, I.C. *1227 §§ 33-1271 through 1276 call for negotiation by all teachers of the terms of the contracts for each successive year. Thus, under the Idaho statutes, teacher's contracts do not continue indefinitely and are renegotiated each year. Since extant law becomes a part of every contract, I.C. § 33-1212 as amended on March 17, 1982 became a part of the Teacher's most current contract.

III.
Finally, the Teachers contend that even if I.C. § 33-1212, as amended on March 17, 1982, applies to their contracts, they are still entitled to a probationary period because they were discharged for unsatisfactory service.
I.C. § 33-1212 provides that if a teacher's contract is non-renewed for reasons other than unsatisfactory service, no probation period is necessary. The District's reasons for non-renewal of the Teachers were reduced enrollment and budget problems. These reasons are reasons other than unsatisfactory service. Thus, we find that the Teachers are not entitled to a probationary period.
The Teachers argue that by selecting the best teachers for renewal, the District is determining that the rest are unsatisfactory. This argument is without merit. The District concedes that but for the reduced enrollment and budget problems of the district, all of the Teachers are qualified for renewal. Thus, the Teachers are satisfactory.
The decision of the trial court is affirmed.
Costs to respondents.
No attorney fees on appeal.
SHEPARD and BAKES, JJ., concur.
BISTLINE and HUNTLEY, Justices, concurring in the judgment affirming, dissenting from the majority opinion.
We dissent with respect to the majority's analyses in parts I and II of its decision. Both sections employ arguments that are not only logically and legally unsound, but unnecessary to the decision. We concur in the result reached by the majority, however, for reasons independent of those put forth by the majority and which we will set forth below.

I.
The majority refuses to tackle the issue of whether the school board violated Idaho's Open Meetings Act, I.C. § 67-2340-47 (1981), by stating that even if the Act were violated, State v. City of Hailey, 102 Idaho 511, 633 P.2d 576 (1981), is dispositive of the issue, excusing any Open Meetings Act violations in this case. The critical language the majority relies upon in Hailey states:
Where deliberations are conducted at a meeting violative of the Open Meetings Act but no firm and final decision is rendered upon the questions then discussed, the impropriety of that meeting will not taint final actions subsequently taken upon questions conscientiously considered at subsequent meetings which do comply with the provisions of the Act. Id. at 514, 633 P.2d at 529 (emphasis added).
As stated in Justice Bistline's dissent in Hailey, the Court's opinion there was a gross example of judicial legislation. Borrowing from the language of Justice Donaldson in Higginson v. Westergard, 100 Idaho 687, 691, 604 P.2d 51 (1979): "In construing statutes, the plain, obvious, and rational meaning is always preferred to any curious, narrow, hidden sense." Nothing is plainer or more obvious than I.C. § 67-2347's declaration that any action taken at any meeting in violation of Idaho's Open Meetings Act is null and void. Thus, accepting the statement of Justice Donaldson, Hailey should be overruled, although for reasons which follow it need not be overruled to reach a proper resolution of this appeal. However, there is no reason why the Court should not utilize this occasion to declare null and void decisions made by government bodies in violation of the Open Meetings Act. If the Court declines *1228 the opportunity, this dissent is ample forewarning of the inevitable.
The majority's reliance on Hailey allows it to state that even if the Act were violated such violation is to be ignored, since the board did openly, honestly, and sincerely attempt to resolve this "delicate and controversial problem," conscientiously attempting to comply with the Open Meetings Act. Whether the board was open, honest, sincere, and conscientious is irrelevant. What is relevant is whether it did or did not comply with the Open Meetings Act, and, if it did violate the Act, whether the decision to implement the school board's RIF policy should be rendered null and void. It is to that issue we turn.
The teachers contend that there are genuine issues of material fact concerning the lawfulness of the decision of the school board to implement its reduction in force policy, and that summary judgment, therefore, should not have been granted. Viewing the facts in a light most favorable to the teachers, and giving them the benefit of all favorable inferences which might reasonably be drawn from the evidence, both of which we must do in ruling on a motion for summary judgment, Kline v. Clinton, 103 Idaho 116, 120, 645 P.2d 350, 354 (1982); Taylor v. Choules, 102 Idaho 222, 224, 628 P.2d 1056, 1058 (1981), we are still led to the conclusion that the school board's decision to implement the RIF policy may properly stand.
The facts when viewed most favorably toward the teachers are as follows:
(1) On March 7, 1983, the school board adopted its RIF policy.[1] At that meeting, the board also decided that before it would vote to implement its RIF policy it would conduct a meeting in which it would hear evidence concerning the school district's financial problems and whether a reduction in force would be the most desirable alternative in remedying the school district's fiscal troubles.
(2) On March 10, 1983, the school board held the meeting called for at the March 7, 1983, meeting. At this March 10 meeting, in which proper notice was given, the board heard statements from 34 persons regarding implementing its RIF policy. The record discloses further that several of the plaintiffs in this case spoke to the board. The board also stated at the meeting that it would accept written statements concerning implementation of the RIF policy until March 17, 1983. The March 10, 1983, meeting was then recessed until March 21, 1983, at 7:00 p.m.
(3) On March 14, 1983, the board held its regular meeting. During this meeting the board adjourned into executive session for the purpose of considering non-renewal of certified personnel. The board ended its meeting, agreeing to reconvene into open session on March 21, 1983.
(4) On March 21, 1983, at 6:00 p.m., the board met in executive session to consider progress made by a school board task force in selecting which teachers would be subject to non-renewal if the RIF policy was implemented. No public notice of this meeting was ever given.[2]
(5) On March 21, 1983, at 7:00 p.m., just after adjourning its 6:00 p.m. executive meeting, the school board met in open session in which it voted to implement its RIF policy.
*1229 The teachers argue that the March 21, 1983, 6:00 p.m. meeting violated I.C. § 33-510. We agree. That section states:
If the time and place of special meetings shall not have been determined at a meeting of the board with all members being present, then notice of the time and place shall be given to each member and announced by written notice conspicuously posted at the school district office in at least two (2) or more public buildings within the school district not less than twenty-four (24) hours before each special meeting is to be convened. (Emphasis added.)
As mentioned above, no public notice was ever given of this meeting.
Idaho's Open Meetings Act provides that if an executive session is to be held by a public agency,
the notice shall be given to the members of the governing board, and to the general public, stating the reason and the specific provision of law authorizing the executive session. Special meetings may be held upon such notice as is appropriate to the circumstances, or as otherwise provided by law.

I.C. § 67-2343 (emphasis added).
"As otherwise provided by law" includes the requirements of I.C. § 33-510, which thereby become incorporated into the Open Meetings Act. Thus, it is clear that the March 21, 1983, 6:00 p.m. meeting was held in violation of Idaho's Open Meetings Act.
The consequences of any governmental action taken in violation of Idaho's Open Meetings Act is, as we stated above, to render "any" action taken at such illegal meeting "null and void." I.C. § 67-2347. We must, therefore, ask the following question: What action, if any, was taken at the illegal meeting, which must be rendered null and void?
The teachers assert that the school board decided to implement its RIF policy at the March 21, 1983, 6:00 p.m. meeting, and that the subsequent decision at the 7:00 p.m. meeting was nothing more than a rubber-stamped, pro forma adoption of the prior decision. We find nothing in the record to support that assertion. We further find nothing in the record by which one could infer this assertion.
The fact that the March 21, 1983, 6:00 p.m. meeting was illegally held does not imply, by itself, that the decision to implement the RIF policy occurred at that meeting. Defendant's Exhibit No. 8, minutes of the illegal meeting, indicate that no decision was made with respect to implementing the RIF policy. Rather, as mentioned above, all that was discussed was specific personnel being considered for non-renewal if the RIF policy were to be implemented. In addition, five of the school board members submitted affidavits by which they attested that no decision to implement the RIF policy was made at the March 21, 1983, 6:00 p.m. meeting.
The fact that the school board took less than ten minutes at the March 21, 1983, 7:00 p.m. meeting to vote to implement the RIF policy also does not suggest that the decision to implement the RIF policy actually occurred at the March 21, 1983, 6:00 p.m. meeting. As mentioned above, the school board had already heard and considered much evidence and received a great deal of input from concerned citizens relating to the implementation of the RIF policy at the March 10, 1983, meeting. We can think of no reason why that would have to be done again at the March 21, 1983, 7:00 p.m. meeting before the board could vote to implement the RIF policy.
In sum, the teachers have not presented any evidence that the decision to implement the RIF policy occurred at the illegal March 21, 1983, 6:00 p.m. meeting. All the teachers have done is point out the illegality of that meeting. On any view of the record, we cannot agree with the teachers that this creates a factual dispute with respect to what occurred at that meeting. Thus, since we do not see any evidence which disputes the school board's assertion that the decision to implement the RIF policy did not occur at the illegal March 21, 1983, 6:00 p.m. meeting, that decision should not be held null and void. Accordingly, *1230 the decision to implement the RIF policy is valid and may stand.
We, of course, do not countenance in the least the school board's illegal March 21, 1983, 6:00 p.m. meeting. Had it complied with the statutory mandate of giving notice for such meetings, our task in resolving this issue would have been much easier. We cannot state strongly enough that our government will only be a government "by the people, for the people, and of the people" if those in power abide by the laws that the people's representatives have enacted. Government should never consider itself the law; rather, like the people, government too should remain obedient to the law government itself makes.
Similarly, though we reach the same conclusion as the majority does with respect to this issue, we register our strong disagreement with its reliance upon Hailey in reaching its conclusion. A primary concern is that the trial bench, the bar, and the public may well conclude from the Court's continued twisted interpretation of Idaho's Open Meetings Act that there is a judicial animosity toward it  an animosity which most will find inexplicable. Idaho's government of the people will only so remain if the people are informed and allowed to be involved in governmental decision-making. Laws are of little value until obeyed, and laws are not always obeyed until enforced. Idaho's Open Meetings Act is not being enforced and is thus of little value other than where its requirements are adhered to irrespective of Hailey. Representative democratic government becomes less representative and less democratic when laws designed to ensure citizen participation, stewardship, and involvement are emasculated or dismembered by judicial legislation, done in the guise of statutory interpretation.

II.
The majority argues that the 1982 amendment to I.C. § 33-1212[3] applies to these teachers' continuing contracts, and, therefore, that the school board acted properly in laying off these teachers without any probationary period granted. This argument is not only unnecessary to the decision, it is logically and legally unsound.
The fact that automatically renewable contracts in Idaho can be renegotiated each year does not mean that statutory rights granted in earlier years do not carry forward to future contracts. This Court held in Robinson v. Joint School Dist. # 150, 100 Idaho 263, 266, 596 P.2d 436, 439 (1979), that the contract which these teachers possess is a "continuing" contract with all of the legal and constitutional protection afforded such contracts. This is still the law, and the majority does not overrule or disavow Robinson.
I.C. § 33-1212 permits school boards to give teachers with automatically renewable contracts pay raises, as well as to reassign such teachers from administrative duties to classroom duties and vice versa. This fact, however, in no way means that these teachers' contracts are not continuing contracts.
Under the uncontroverted facts of this case, and in light of the purpose behind § 33-1212, it is clear that the school board could do what it did regardless of which version of § 33-1212 applies. The teachers did not dispute the fact that in the winter of 1983 Emmett School District was experiencing a severe financial crisis. There simply was inadequate funding to keep all the teachers employed. The crisis was a result of decreasing revenues and enrollments.
The purpose of I.C. § 33-1212's granting of teachers on automatically renewable contract status a probationary procedure is to enable such teachers to improve in any area of unsatisfactory performance. Rather than being summarily dismissed at the first indication of subpar performance, teachers on automatically renewable contract status are granted the probationary time period in which to remedy any teaching deficiency.
*1231 We perceive no logical reason for use of a probationary time period in the laying off of teachers due to a severe financial crisis. Nothing would be gained by such a procedure. Placing on probation teachers who have done nothing to merit such a procedure would unnecessarily sigmatize them, and would serve no useful purpose. If the entire faculty of the school district were placed on probation, the financial crisis would yet remain  with the unfortunate but necessary consequence that some teachers must nevertheless be laid off or terminated. Since we interpret I.C. § 33-1212's grant of a probationary procedure to teachers on automatically renewable contract status as applying only to teachers being laid off or terminated because of unsatisfactory performance, it is readily apparent that that procedure is notapplicable to the school board's reduction-in-force policy in this case. Thus, part II of the majority's opinion is dicta, bearing no relationship to any issue necessary to the decision of this appeal.
NOTES
[1] Open Meetings Act, I.C. §§ 67-2340  2347 (1981).
[2] I.C. § 67-2347 (1981).
[3] The Teachers cite Robinson in support of their position. However, in Robinson, we held that the complainant teacher was entitled to certain statutory protections before discharge. The statute we applied was the law extant at the time that teacher's current contract was formed.
[1] The reduction in force policy, which the school board adopted March 7, 1983, also included the procedures by which the school board would implement its policy.
[2] The school board argues that no notice of this meeting was given since it considered it simply a continuation of the executive session it conducted on March 14, 1983. This argument is without merit. We cannot believe the legislature intended to permit the circumvention of the various notice requirements it has enacted by allowing a government body to avoid giving notice of a meeting by referring to it as simply a "continuation" of a previous meeting in which proper notice was given. To argue otherwise is to permit that which the school board did and to gut any meaning in Idaho's Open Meetings Act. This would prove to be an intolerable subjugation of democratic principles by denying the people the right to access governmental decision-making.
[3] I.C. § 33-1212 has been amended often. In 1984 it was amended and redesignated as § 33-515 by § 10 of the 1984 Idaho Sess. Laws, ch. 286.