700 P.2d 56

Spence GARDNER, Plaintiff-Appellant,

v.

SCHOOL DISTRICT NO. 55; Larry Johnson, Chairman, Gary Haddock, Vice Chairman, Diane Powell, Clerk of the Board of Trustees of School District No. 55; and Fred Higley, Individually and as President of the Blackfoot Education Association, Defendants-Respondents.

No. 14929.

Supreme Court of Idaho.

April 30, 1985.

R.M. Whittier, Pocatello, for plaintiff-appellant.

Fred J. Hahn, Idaho Falls, Byron J. Johnson, Boise, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from a partial summary judgment in favor of defendants and from a general verdict for defendants following jury trial, in a case arising from the nonrenewal of a contract of employment of a superintendent of Blackfoot School District No. 55. We affirm.

Plaintiff-appellant Gardner was hired by Blackfoot School District as a teacher and coach in 1953. In 1960, he became an administrative assistant to the high school principal, and in 1962, he became an assistant to the superintendent of schools of the district. In 1971, following the death of the superintendent of schools, Gardner was named acting superintendent, and in December 1971, Gardner received a three-year contract as superintendent of schools. Thereafter, the school board each year extended Gardner's contract by one year, keeping the agreement on a three-year basis until 1977. Those extensions did not take place after 1977, and therefore Gardner's contract was due to expire January 31, 1980.

Gardner's contract called for a review at the regular January meeting, and in December 1979, Gardner notified the board that his contract review should be placed as an item on the agenda for the January 1980 meeting. That review did not take place, but rather the chairman of the school board called an executive session board meeting to consider the renewal of Gardner's contract. That meeting was held in January 1980, with Gardner not being allowed to attend, and Gardner was later informed that his contract would not be renewed. Although Gardner requested it, he was not allowed to see or discuss his evaluation. Gardner was present at a January 1980 executive session of the board, and the minutes of that session state:

"[T]he board feels that this is an appropriate time to examine the role of superintendent in School District No. 55 and to look at other available avenues. The board would welcome the superintendent's application if he chooses to submit it; therefore, the board is offering the superintendent a five month contract which will expire June 30, 1980, during which time the board will open the position of superintendent and look at all available applicants and make a selection of those applicants after June 30, 1980. The date for acceptance or rejection has been set for January 29, 1980. If the contract is rejected, the board will meet and appoint an acting superintendent effective February 1, 1980.

"The board chairman asked the superintendent for his response. The superintendent asked the board to list the areas that were listed deficient in his evaluation in writing so that he could review them. The superintendent also asked the board to sign the evaluations. The board chairman replied that it had been the board's advice from their attorney that they not do that. The board chairman explained that the board has spent a lot of time discussing and going over things, and the opinion of the majority of the board is that any indepth discussion concerning the evaluation would be of no benefit.

"The superintendent explained that the board had not given him an opportunity to respond to his evaluation.... The superintendent explained that the board

had mentioned his strong points and his weak points, but he had not seen the evaluation forms and did not know what the board was talking about. The board chairman explained that the board did not feel like they wanted to get into that discussion because it wouldn't be of any benefit or value. The superintendent asked the chairman if the board was unanimous in that decision. The chairman replied that it was not the unanimous decision of the board. The chairman explained that the board would have to make a motion and vote."

Thereafter, Gardner was rehired on a five-month basis, with his contract to end June 30, 1980. On June 19, 1980, the school board voted to offer Gardner a position as an administrative assistant, and Gardner wrote a letter to the board accepting that position.

The defendant Higley, as president of the Blackfoot Education Association, wrote a letter to the Blackfoot newspaper and communicated with the school board regarding the rehiring of Gardner. A special board meeting was held, at which Higley appeared and stated the objection of the association to the board's spending money for a newly-created administrative position, rather than on other needs of the school system.

At some time in June 1980, Gardner began negotiations with the Pocatello School District for an administrator's position. In early August, he signed a contract with the Pocatello School District. He began employment with that district later the same month.

Gardner brought this action against Blackfoot School District No. 55, its board of trustees, and Fred Higley "as an agent and president of THE BLACKFOOT EDUCATION ASSOCIATION, an unincorporated association."[1] The trial court granted partial summary judgment, dismissing all causes of action against the individual

members of the Board of Trustees; holding that Gardner had no right to an automatic renewal of his contract as superintendent; and holding that the school board had not denied Gardner any of his constitutional rights. Following jury trial, a verdict was returned against Gardner on all claims.

Gardner contends that he had a right to the renewal of his contract as superintendent of schools either by virtue of the contract terms or by virtue of rights acquired during the time that he served as a teacher prior to becoming superintendent of schools.

▇ At the time at issue here, Gardner's contract provided he would be employed "for a period of three (3) years (twelve months per year), beginning February 1, 1977 and extending to January 31, 1980." Clearly, Gardner had no vested right to an extension of his contract under the unambiguous terms of that agreement, after January 31, 1980, and we affirm the trial court's holding that the school district committed no breach of the written contract.

Gardner's contract specifically incorporated by reference "the pertinent statutes of the State of Idaho and such regulations as the State Board of Education may legally prescribe...." I.C. § 33–1212, as that section affected renewable teacher's contracts, at the time in question, provided in pertinent part as follows:

"33–1212. **Renewable contract.**— During the third full year of continous [sic] employment by the same school district, including any specially chartered district, each certificated employee named in subsection 2[13] of section 33–1001, Idaho Code, and each school nurse and school librarian shall be evaluated for a renewable contract and shall, upon having been offered a contract for the next ensuing year, having given notice of acceptance of renewal and upon signing a contract for a fourth full year, be placed on a renewable contract status

---

1. Under such an allegation, it is questionable whether Blackfoot Education Association was properly joined as a party. The court refused to dismiss complaints against Higley and the asso-

ciation. In view of the jury verdict and of our disposition of the case today, we deem it unnecessary to decide whether the association was properly joined as a defendant.

with said school district, until the age of sixty-five (65) years is attained, and subject to the provisions included in this chapter.

\* \* \* \* \* \*

"Nothing herein shall prevent the board of trustees from offering a renewed contract increasing the salary of any certificated person, from reassigning administrative or supervisory employees to classroom teaching duties with appropriate reduction of salaries from pre-existing contracts.

"Before a board of trustees can determine not to renew the contract of any certificated person whose contract would otherwise be automatically renewed, or to renew the contract of any such person at a reduced salary, such person shall be entitled to a probationary period. This period of probation shall be preceded by a written notice from the board of trustees with reasons for such probationary period and with provisions for adequate supervision and evaluation of the person's performance during the probationary period. Such period of probation shall not affect the person's renewable contract status."

I.C. § 33–1001, referred to in the first paragraph of I.C. § 33–1212 for its definition of "teacher," provided from 1974 until 1979 in relevant part:

"**33–1001. Definitions.**—The following words and phrases used in this chapter are defined as follows:

\* \* \* \* \* \*

"2. 'Teacher' as used in this act shall mean any person employed in a teaching, instructional, supervisory, educational administrative or educational and scientific capacity in any school district. In case of doubt the state board of education shall determine whether any person is a teacher as thus defined."

A "Statement of Determination," passed and adopted by the State Board of Education and appearing in its official board minutes for the meeting of September 6, 1974, contained the following pertinent language:

"Section 33–[1001], Paragraph 2, *Idaho Code,* defines teacher as 'any person employed in a teaching, instructional, supervisory, educational, administrative or educational and scientific capacity in any school district. In case of doubt the State Board of Education shall determine whether any person is a teacher as thus defined.'

"There is a case of coubt [sic] existing as to whether or not any superintendent of any district is a teacher. Therefore, the State Board of Education and Board of Regents of the University of Idaho, pursuant to the authority vested therein by Section 33–1101, *Idaho Code,* hereby determines that a superintendent is not a teacher within the meaning of said section.

"The position of the Superintendent is unique within the District. Each District has only one Superintendent. Section 33–513, *Idaho Code* provides that a District may employ a Superintendent on a contract for a term not to exceed three years. All other certificated employees are employed on annual contracts. Further, the Superintendent is the executive officer of the District Board of Trustees with such duties and powers as the Board may prescribe. The Superintendent is answerable only to the Board of Trustees. He or she is unsupervised by any other member of the education profession. The position is controlled solely and immediately by the Board of Trustees. It is because of the separateness, distinction, and uniqueness of the position of Superintendents from all other certificated positions of employment within the Districts that the State Board of Education and Board of Regents of the University of Idaho has determined the case of doubt as it has.

"Section 33–1212, *Idaho Code* provides that each certificated employee named in Section 33–1001, *Idaho Code,* after a certain period of time of employment by the same district, shall be entitled to a renewable contract. Since the State Board has determined that a Superintendent [sic] is not a teacher within the meaning

of Section 33–1001, it must necessarily follow that a Superintendent does not fall within the renewable contract provisions of Section 33–1212, *Idaho Code*, nor are the provisions thereof applicable to a Superintendent as they may be to other certificated employees of the District."

This resolution was effective and is dispositive of Gardner's claimed renewable contract rights arising out of his status as superintendent. *See Seyfang v. Bd. of Trustees of Washakie*, 563 P.2d 1376 (Wyo. 1977); *Lester v. Bd. of Educ.*, 87 Ill.App.2d 269, 230 N.E.2d 893 (1967); *Hentschke v. Sink*, 34 Cal.App.3d 19, 109 Cal.Rptr. 549 (2d Dist.1973).

The trial court held, "If the jury were to determine that Mr. Gardner possessed no contractual right of employment as an Administrative Assistant, then Mr. Gardner would step into the shoes and have the rights of a tenured teacher." Thereby, the trial court impliedly held that the plaintiff did not forfeit his rights as a teacher when he took a position as an administrator and later as superintendent of schools. Since Gardner made no demand upon the school district for restoration to teacher status, we need not decide whether, as impliedly held by the trial court, he had teacher renewable contract rights and he could thus have demanded restoration to status as a teacher. Assuming, without deciding, that Gardner retained teacher renewable contract privileges, nevertheless, those privileges did not extend to covering the position of superintendent of schools, and nothing in the statutes or Gardner's contract entitled him to receive notice, hearing, or the probationary considerations that are incident to teacher status, prior to the board's termination of his superintendent contract.

In 1980, the legislature amended I.C. § 33–1001 to remove the language authorizing the State Board of Education to re- solve any doubts as to renewable contract status. However, the legislature still did not speak specifically to a superintendent's renewable contract rights. In absence of clear legislative guidance, we must surmise the nature of a superintendent's renewal rights from the spirit and language of the available statutes and from the case law. While we hold that Gardner's rights were set by the above-quoted resolution of the state board, we look to the case law as instructive on this and future cases.

Those courts faced with the issue of whether a superintendent of schools is entitled to tenure, in his capacity as superintendent, have generally answered the question in the negative, unless specific statutory definitions dictated to the contrary.[2] For instance, one state legislature specifically excluded the superintendent from eligibility for privileges accorded teachers, *see Floyd v. Board of Education*, 598 S.W.2d 460 (Ky.App.1979), interpreting K.R.S. 161.720, while another state specifically included superintendents within its tenure acts, bringing them within the definition of "teacher," *McNely v. Board of Education*, 9 Ill.2d 143, 137 N.E.2d 63 (1956), interpreting Ill.Rev.Stat.1949, chap. 122, par. 24–1. Notably, where the statutes are unclear as to superintendents' tenure rights, the courts have tended to construe those provisions narrowly and literally. *See, e.g., Fuller v. North Kansas City School Dist.*, 629 S.W.2d 404 (Mo.App. 1981), interpreting Mo.Rev.Stat. 168.104 (1969); *Meloy v. Reorganized School Dist.*, 631 S.W.2d 933 (Mo.App.1982), interpreting Mo.Rev.Stat. 168.104(4); *Ross v. Board of Educ.*, 367 N.E.2d 1209 (Ohio App.1977), interpreting Ohio R.C. 3319.09A; *Eelkema v. Board of Education*, 215 Minn. 590, 11 N.W.2d 76 (1943), interpreting Minn.L. 1927, c. 36, § 1. *Cf., Maine-Endwell Teachers Asso. v. Maine-Endwell Cent. School Dist.*, 92 A.D.2d 1052, 461 N.Y.S.2d

---

**2.** We note that these opinions from other courts speak in terms of "tenure," whereas the Idaho statutes confer, not tenure, but renewable contract status. Recognizing that the tenure language is distinguishable from the specific prob- lem presented here, we nonetheless find these cases from other jurisdictions helpful by analogy, in a subject matter where the case law is comparatively sparse.

537 (3rd Dept.1983); *Whisman v. San Francisco Unified School District*, 86 Cal. App.3d 782, 150 Cal.Rptr. 548 (1st Dist. 1978), interpreting Cal.Educ.Code § 44894.

In *Ross v. Board of Education*, 52 Ohio App.2d 28, 367 N.E.2d 1209 (1977), an erstwhile teacher received a contract as a principal, which, after one year, was not renewed. Ross sued the school district, contending she had acquired tenure as principal and could not have her contract nonrenewed without the procedures accorded tenured individuals. The court pointed out that the legislature had not expressly conferred tenure on a supervisor, and the court found no policy reasons for doing so. The court stated, 367 N.E.2d at 1214:

"Since the protective tenure statutes did not apply to the appellee in her position as principal, there was no requirement to hold a hearing or to specify the reason for the non-renewal of her contract. The decision of the board was unanimous. Absent a claim that the school board violated a statutory or constitutional obligation by depriving the appellee of a vested right, or engaging in impermissible discriminatory conduct, the trial court may not substitute its judgment for that of the board. *Cf. Mt. Healthy City School Dist. Bd. of Education v. Doyle* (1977), 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471."

A similar case is *Eelkema v. Board of Educ. of City of Duluth*, 215 Minn. 590, 11 N.W.2d 76 (1943). There a superintendent sued upon the nonrenewal of his contract, also claiming he had acquired tenure under teacher tenure laws. The court stated:

"The character of the services of a superintendent of schools to the district and of his relations to the board is such that it should require a clear declaration of legislative intent to bring him within the continuous employment effected by the tenure act. As well said by this court in *Jensen v. Independent Consol. School Dist.*, 160 Minn. 233, 236, 199 N.W. 911, 913: ' * * * Moreover, a sound public policy requires that there should be a way of promptly dispensing with a super-

intendent who is not working in harmony with the board. The members of the board are the representatives of the people, and the power of control should rest with them. They are responsible for the results, and they properly are given the power to summarily release a superintendent.' This was the policy with which the legislature started.... It has declared no intent to go further. The board of education is within its powers in refusing to reemploy the relator."

We hold that Gardner had no renewable contract rights as a superintendent and that he served in that capacity at the pleasure of the school board, whose discretion was limited only by Gardner's contract and by the board's adherence to anti-discrimination statutes. Since he had no renewable contract rights, Gardner was not denied due process in the board's nonrenewal of his contract, despite the board's denial to him of further hearings and a probationary period. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Floyd v. Board of Educ.*, 598 S.W.2d 460 (Ky.App.1979); *Whisman v. San Francisco Unified School Dist.*, 86 Cal.App.3d 782, 150 Cal. Rptr. 548 (1st Dist.1978).

There is some argument that although, as above stated, Gardner never requested a teaching assignment following the nonrenewal of his contract as superintendent, it was somehow incumbent upon the school board to notify Gardner by May 1, 1980 that his nonexistent contract as a teacher would not be renewed and that he was entitled to a probationary period as a teacher and a hearing prior to the discontinuance of any teaching employment. We disagree. It is clear that Gardner was not then employed as a teacher and that he at that time had no contract as a teacher. While it is conceivable, as aforesaid, that Gardner may have had a right to step down from superintendent to teacher status, he did not assert that right, and indeed the jury may have determined that he precluded the district from granting him that right when he accepted employment elsewhere.

We cannot strain the statutes to hold necessary the renewal of a nonexistent contract or to require a probationary period for a nonexistent teacher.

■ Gardner next asserts that, although he had accepted a contract as an administrator with the Pocatello School District, nevertheless he had an enforceable contract with the Blackfoot district entitling him to an administrative position. The trial judge refused summary judgment on this issue of existence of a valid contract, and he properly sent the question to the jury. *Werry v. Phillips Petroleum Co.*, 97 Idaho 130, 540 P.2d 792 (1975); *Fullmer v. Proctor*, 59 Idaho 455, 82 P.2d 1103 (1938). The jury returned a general verdict for the defendants. We find no error in this regard.

■ Gardner also asserts that the school board violated Idaho's Open Meeting Law, I.C. §§ 67–2340, *et seq.* We disagree. The minutes of the executive sessions, from which session Gardner was excluded, reflect only a discussion of the evaluation of Gardner and the possible tendering of a contract extension to him. The decision that Gardner would not be offered a new contract, but that he would be required, along with other applicants, to make application for the advertised opening of the position as superintendent was not made in an executive session meeting, but rather was made in an open public meeting of the board. We find no error and no violation of the Open Meeting Law here. *See* I.C. § 67–2342; *State ex rel. Roark v. City of Hailey*, 102 Idaho 511, 633 P.2d 576 (1981).

■ As to the claim that the Blackfoot Education Association tortiously interfered with Gardner's contractual relationship with the Blackfoot School District, Gardner argues that the evidence does not support the jury verdict for defendants. Assuming, without deciding, that the Blackfoot Education Association was properly a party to the case; that the trial judge did not abuse his discretion in refusing to dismiss the Blackfoot Education Association from the trial, but applied Rule 23(g) to the case; and that he did not abuse his discretion in holding that the case was in the nature of a class action (*see Milonas v. Williams*, 691 F.2d 931 (10th Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983); *Montgomery v. Rumsfeld*, 572 F.2d 250 (9th Cir.1978)); nevertheless, the jury returned a verdict against Gardner on his claim against the Blackfoot Education Association. That verdict is supported by the evidence and will not be reversed upon appeal.

We have reviewed Gardner's remaining assignments of error and find them to be without merit.

The judgment and orders of the trial court are affirmed in their entirety. Costs to respondent Higley are taxed to appellant Gardner. No other costs or attorney's fees on appeal.

DONALDSON, C.J., BAKES, J., and McFADDEN, J. Pro Tem, concur.

BISTLINE, Justice, specially concurring.

I concur in the majority's opinion, except where it seemingly relies upon *State ex. rel. Roark v. City of Hailey*, 102 Idaho 511, 633 P.2d 576 (1981), in order to hold that there was no violation of Idaho's Open Meetings Act. As pointed out in my separate opinion in *Hailey*, and then more recently in *Baker v. Independent School District of Emmett*, Idaho, 691 P.2d 1223, 1227–30 (1984), which Justice Huntley joined, *Hailey's* interpretation of Idaho's Open Meetings Act is manifestly incorrect. Therefore, today's citation of *Hailey* is both unnecessary and unwarranted. It is unnecessary because the evidence reveals that no illegal action was taken at the school board's executive session, or at least nothing was done that would call for invalidation pursuant to I.C. § 67–2340 *et. seq.* It is unwarranted simply because it is an unneeded, unjustified endorsement of *Hailey*, a shot of adrenalin, as it were.

It is regrettable, too, in that it has caused me to re-read *Hailey* and experience recurring dismay at this Court's frustration of the prosecuting attorney's attempt to implement the legislative mandate

of open meetings. Even more regrettable is it to note that the legislatures convening since *Hailey* have not reciprocated the Blaine County prosecutor's efforts at applying their law.