(August 3, 1926.)

## F. W. REED, E. V. BOUGHTON and WILLIAM STORY, JR., Appellants, v. H. F. SAMUELS, Respondent.

[249 Pac. 893.]

STATUTE OF FRAUDS—CONDITIONAL PROMISE OF STOCKHOLDER TO PAY CORPORATE DEBT HELD NOT TO CREATE ORIGINAL OBLIGATION.

Promise of stockholder that, if creditor of corporation would accept certain amount less than his claims, stockholder would pay it, *held* not to create original obligation of promisor constituting exception to statute, under C. S., secs. 7977, subds. 2, 3, no consideration moving directly to him as an individual.

APPEAL from the District Court of the Eighth Judicial District, for Bonner County. Hon. Chas. L. Heitman, Judge.

Action for debt. Judgment for defendant. *Affirmed.*

John P. Gray, W. C. McEachern and E. V. Boughton, for Appellants.

This action is predicated upon the proposition that the obligation of Samuels is an original obligation under subdivision 2 of C. S., sec. 7977, and also under the last provision contained in subd. 3 of said section. The promise is an original obligation because made upon a consideration beneficial to the promisor. (*Emerson v. Slater,* 22 How. 28, 16 L. ed. 360; *Davis v. Patrick,* 141 U. S. 479, 12 Sup. Ct. 58, 35 L. ed. 826; *Wills v. Cutler,* 61 N. H. 405; *Garroway v. Jennings,* 189 Cal. 97, 207 Pac. 554; *Fairchild v. Cartwright,* 39 Cal. App. 118, 178 Pac. 333; *Rice v. Hardwick,* 17 N. M. 73, 124 Pac. 800; Williston on Contracts, secs. 462, 472, 473; Page on Contracts, secs. 1218–1249.)

Publisher's Note.

Stockholder's oral promise to pay debt of corporation, see note in 8 A. L. R. 1198. See, also, 25 R. C. L. 509.

Under subdivision 2 of C. S., sec. 7977, the promise is an original obligation where the creditor parts with value. (*Emerson v. Slater, supra; Enterprise Trading Co. v. Bank of Crowell* (Tex.), 167 S. W. 296; *Leonard v. Vredenburg,* 8 Johns. (N. Y.) 29, 5 Am. Dec. 317; *Van Winkle v. King,* 145 Ky. 691, 141 S. W. 46.)

E. W. Wheelan, for Respondent.

A promise to answer for the debt, default or miscarriage of another is invalid unless the same or some note or memorandum thereof be in writing and subscribed by the party charged, or by his agent.   (C. S., sec. 7976.)

For a case to come within the exceptions of sec. 7977, it is necessary that the oral agreement of promisor be supported by a new and original consideration between the newly contracting parties.   (25 R. C. L. 493; 27 C. J., pp. 145, 146 and 147.)

In order to take the case out of the operation of the statute, the consideration must be a benefit to the promisor which was the primary object of making the promise as distinguished from a benefit which is merely incidental, indirect or remote, which will not take the promise out of the statute. (*Choate v. Hoogstraat,* 105 Fed. 713, 46 C. C. A. 174; *Clapp v. Webb,* 52 Wis. 638, 9 N. W. 796; *Commercial Nat. Bank of Appleton v. (Smith) Goodrick,* 107 Wis. 574, 83 N. W. 766; *McKenzie v. Puget Sound Nat. Bank,* 9 Wash. 442, 43 Am. St. 844, 37 Pac. 668; *Ames v. Foster,* 106 Mass. 400, 8 Am. Rep. 343.)

An oral promise to pay for benefits previously rendered to a third person is collateral and within the statute unless it is based upon a fresh consideration relating to the personal interest of the promisor and is intended as an independent original contract. (27 C. J. 144; *Fuller & Rice Lumber & Mfg. Co. v. Houseman,* 114 Mich. 275, 72 N. W. 187.)

BUDGE, J.—This is an action brought by appellants against respondent to recover $4,000, with interest.   In the

complaint it is alleged, substantially, that the Idaho Coal Mines Company had issued bonds secured by deed of trust; that the Columbia Trust Company was its trustee; that the bonds were not paid; that appellants, attorneys for the trustee, brought an action in foreclosure and obtained a judgment and were awarded in connection therewith attorneys' fees of $9,000; that in the decree of foreclosure and order of sale it was provided that in case any of the bondholders of the Idaho Coal Mines Company did not join in a plan by which certain property was to be bid in for the bondholders, they were to be paid in cash.

It is further alleged in the complaint that respondent was interested as a bondholder in acquiring the property for the Teton Coal Company and that he agreed to advance the necessary cash, taking bonds therefor, to satisfy the nonconsenting bondholders of the Idaho Coal Mines Company; that appellants rendered certain services to the Teton Coal Company or to its stockholders subsequent to the foreclosure proceedings above mentioned, and that there was due them for such services the sum of $10,000. It is further alleged that "the Teton Coal Company gave to the defendant Samuels full power and authority to settle the claim of these plaintiffs"; that "the attorneys' fees in the foreclosure proceeding of $9,000 allowed by the court as above stated, carried interest. Said Samuels promised and agreed with these plaintiffs that if the plaintiffs would remit this accrued interest due on said $9,000 and would agree to the sum of $8,000 as compensation for the services rendered to the bondholders and the Teton Coal Company in the organization thereof . . . . he, the said Samuels would personally pay the attorneys' fee of $9,000 and the said sum of $8,000, those sums to be agreed and settled as fees for said services. Although plaintiffs had claimed a fee in excess of the said $8,000 for their said services and were entitled to the said interest upon the said $9,000, the plaintiffs agreed upon the promise and agreement of said Samuels, to and with said Samuels to accept the said sum of $9,000 without interest in said foreclosure proceed-

ings and the said sum of $8,000 for their services rendered as above stated. Said Samuels thereupon and thereafter, in pursuance of said agreement, paid to the Columbia Trust Company the balance of the amount due it under the foreclosure proceedings, deducting from the total thereof the interest on the said $9,000, and procured from the said Columbia Trust Company a conveyance to the Teton Coal Company of the interest authorized to be conveyed by the bondholders at that time. In addition thereto the said Samuels reaffirmed his agreement to pay the said sum of $8,000 to these plaintiffs for the services above mentioned and in pursuance of said agreement thereupon paid to the plaintiffs the sum of $4,000 by his own check on account of said $8,000 so agreed upon, and promised and agreed that immediately upon his return to Coeur d'Alene, Idaho, which he promised would be within a few days, he would pay the balance of $4,000 due unto the plaintiffs.''

It is further alleged in the complaint that the contract was oral and made in Salt Lake City, Utah, and that plaintiffs released the interest upon said $9,000 and agreed to accept the sum of $8,000 for their other services in consideration of the agreement on the part of Samuels to pay the sum; that the settlement agreed upon was beneficial to Samuels, he being largely interested in the coal company, having engaged in the promotion thereof and had some arrangement, understanding or agreement under which he was to advance and pay out personally the money for the discharge of the indebtedness to the plaintiffs over and above the amount advanced by the bondholders; that Samuels was desirous of reducing the amount necessary for him to advance to the lowest sum possible, and that he promised personally to make the payments so agreed upon to the plaintiffs and became the principal debtor therefor. It is further alleged that said settlement was for the advantage of Samuels in that it reduced the amount of money which it was necessary for him to personally advance in the development of the affairs and business of the Teton Coal Company and in its promotion and in promoting his own

interest therein; that the agreement made by the plaintiffs to waive the interest on the said $9,000 and the further agreement to accept the sum of $8,000 for their services was upon the distinct understanding and agreement with Samuels that he would personally assume said liability and pay the said moneys, but that he failed, neglected and refused to pay the plaintiffs the balance of the $4,000 under his agreement.

To the complaint of appellants respondent filed a general demurrer which was sustained by the trial court. Appellants were granted time within which to serve an amended complaint but refused to do so, electing to stand upon their complaint, whereupon judgment of dismissal was entered, from which judgment this appeal is prosecuted.

The question presented is whether or not appellants have stated a cause of action which takes them without the statute of frauds.

It will be observed from a reading of the complaint that appellants' claim of $9,000 was allowed in the foreclosure proceedings against the Idaho Coal Mines Company and was a part of the judgment. It will also be noticed that the alleged claim of $10,000 was for services rendered to the Teton Coal Company and its stockholders. Attention is also directed to the fact that these services, for which the sum of $10,000 was claimed, were rendered and the judgment including the $9,000, carrying interest, obtained prior to any alleged agreement with respondent. It will further be noticed that it is alleged in the complaint that appellants claim there was due $10,000, but do not allege that this amount, or any part thereof, was ever agreed upon as the amount due appellants by the Teton Coal Company or its stockholders. The complaint fails to allege that there was any written agreement or memorandum entered into between appellants and respondent that respondent would pay $8,000 of the $10,000 alleged to be due for services, or $9,000 without interest, but it is specifically alleged that the Teton Coal Company, one of appellants' original debtors, gave to respondent full power and authority to settle the

claim of appellants and to fix and agree upon the indebtedness due them. Appellants seek to hold respondent upon an oral promise for an alleged indebtedness of a third party, namely, the Teton Coal Company.

C. S., sec. 7976, provides, *inter alia,* that a promise to answer for the debt, default or miscarriage of another is invalid unless the same or some note or memorandum thereof be in writing and subscribed by the party charged, or by his agent. The exceptions to this rule are contained under the provisions of C. S., sec. 7977, and if respondent is liable under the allegations in appellants' complaint, such liability is fixed under subdivision 2 of C. S., sec. 7977, or under the last provision contained in subdivision 3 of that section. In either case a promise to answer for the obligation of another is deemed an original obligation of the promisor and need not be in writing:

"2. Where the creditor parts with value, or enters into an obligation, in consideration of the obligations in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made, his surety.

"3. .... or upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation, or from another person."

The question therefore arises, did appellants, as creditors of the Idaho Coal Mines Company and the Teton Coal Company, part with value or enter into an obligation with respondent in consideration of which obligation respondent's promise was made, in terms or under such circumstances as rendered respondent their principal debtor and the Teton Coal Company, on whose behalf the promise was made, his surety; or, in other words, are the facts alleged in the complaint sufficient to show, in the absence of any note or memorandum, that respondent became, by reason of the promise made to appellants, their principal debtor, obligated to pay the $4,000 sought to be recovered, by reason of the fact that appellants agreed to accept the $9,000 awarded to

them in the judgment of foreclosure against the Idaho Coal Mines Company without interest, and agreed to accept $8,000 in settlement of an alleged indebtedness of $10,000 for services rendered to the Teton Coal Company or its stockholders.

The complaint does not allege that the antecedent debt due appellants from the Idaho Coal Mines Company and the Teton Coal Company or its stockholders, was canceled by reason of the promise made by respondent. Such an allegation might not be necessary in order to state a cause of action if, as a matter of fact, appellants have brought themselves within either of the foregoing statutory exceptions quoted. Neither does the complaint allege that respondent, by reason of the cancelation of the antecedent debt, promised appellants that he would pay the amount sought to be recovered, which might not be fatal.

The following allegation contained the promise made by Samuels, and is the basis of the action, namely:

"Said Samuels promised and agreed with these plaintiffs that if the plaintiffs would remit this accrued interest due on said $9,000 and would agree to the sum of $8,000 as compensation for the services rendered to the bondholders and the Teton Coal Company in the organization thereof and in the matters herein referred to, he the said Samuels would personally pay the attorneys' fee of $9,000 and the said sum of $8,000, those sums to be agreed and settled as fees for said services. Although plaintiffs had claimed a fee in excess of the said $8,000 for their said services and were entitled to the said interest upon the said $9,000, the plaintiffs agreed upon the promise and agreement of said Samuels, to and with said Samuels to accept the said sum of $9,000 without interest in said foreclosure proceedings and the said sum of $8,000 for their services rendered as above stated."

The consideration for the promise made by respondent, as alleged in the complaint, was the cancelation of the interest on the $9,000 and the reduction of the claim of $10,000 to $8,000. It is not alleged that respondent received the

interest remitted or the $2,000 deducted from the $10,000. Any promise to pay the debt of a third party, whether or not in writing, must be founded upon a consideration in order to be binding. (*McKenzie v. Puget Sound Nat. Bank* 9 Wash. 442, 43 Am. St. 844, 37 Pac. 668.) There was no consideration moving to respondent.

The rule is stated in *Curtis v. Brown,* 5 Cush. (Mass.), 488, 491, as follows:

"It is no sufficient ground, to prevent the operation of the statute of frauds, that the plaintiff has relinquished an advantage, or given up a lien, in consequence of the defendant's promise, if that advantage has not also directly inured to the benefit of the defendant, so as in effect to make it a purchase by the defendant of the plaintiff. . . . . The cases, in which it has been held otherwise, are those where the plaintiff, in consideration of the promise, has relinquished some lien, benefit, or advantage for securing or recovering his debt, and where by means of such relinquishment, the same interest or advantage has inured to the benefit of the defendant."

The complaint in the instant case fails to allege that the settlement of the claim of appellants inured directly to the benefit of respondent so as in effect to make it a purchase by respondent of appellants' claims, and it is not suffiicent to allege that respondent benefited indirectly, or as a stockholder.

Under the provisions of C. S., sec. 7977, subd. 2, the creditor must part with value under circumstances such as to make the party making the promise the principal debtor and the person in whose behalf it was made his surety. The complaint here does not allege that the creditors parted with value to respondent. If they parted with value it was to the company. It inured to the company's benefit and to respondent indirectly as a stockholder. There was no consideration moving to respondent individually from appellants upon which to base an obligation or make him the principal debtor. Neither is it alleged in the complaint that

the company, the party in whose behalf the settlement was made, became respondent's surety.

In our opinion the correct rule of law applicable to the facts as alleged in the complaint is stated in 27 C. J. 147, as follows:

"Where the primary debt subsists and was antecedently contracted, the promise to pay it is original when it is founded on a new consideration moving to the promisor and beneficial to him, and such that the promisor thereby comes under an independent duty of payment irrespective of the liability of the principal debtor. The rule in this form has met with practically universal acceptance."

From the complaint we think it affirmatively appears that respondent was the agent of the Teton Coal Company, clothed with the power to settle the claims of appellants, and as such agent made the settlement, and that no direct benefit, other than such as inured to the stockholders generally, came to respondent; that no consideration to support the promise relied upon is sufficiently alleged, nor that appellants as creditors of either the Teton Coal Company or the Idaho Coal Mines Company, parted with value in terms or under circumstances such as to render respondent their principal debtor.

From what has been said it follows that the court did not err in sustaining the demurrer. The judgment is affirmed, with costs to respondent.

William A. Lee, C. J., and Taylor, J., concur.

Givens, J., dissents.