710 P.2d 520

**John J. BEAUPRE,**
**Plaintiff-Respondent-Cross**
**Appellant,**

v.

**Gerald Robert KINGEN,**
**Defendant-Appellant-Cross**
**Respondent,**

and

**Douglas Betzold, Defendant.**

**John J. BEAUPRE,**
**Plaintiff-Respondent-Cross**
**Appellant,**

v.

**Gerald Robert KINGEN, Defendant,**

and

**Douglas Betzold,**
**Defendant-Appellant-Cross**
**Respondent.**

Nos. 15489, 15498.

Supreme Court of Idaho.

Oct. 10, 1985.

Rehearing Dismissed Dec. 5, 1985.

Barry J. Luboviski, Ketchum, for appellant-cross-respondent Kingen.

Michael F. Donovan, Ketchum, for appellant-cross-respondent Betzold.

Roger E. Crist, Ketchum, for respondent-cross-appellant.

SHEPARD, Justice.

This is an appeal by defendants-appellants Kingen and Betzold from a judgment against them in an action brought by plaintiff-respondent Beaupre. Beaupre had sued for moneys expended by him pursuant to an alleged oral agreement to employ attorneys to defend lawsuits against a corporation in which the three parties were the sole stockholders. We affirm.

Beaupre, Kingen and Betzold formed the Colo-Robin Corporation in March 1981, for the purpose of operating a franchised Red Robin restaurant in Aspen, Colorado. Each party contributed capital to the corporation. The three men borrowed funds from a local bank, each man executing a written personal guarantee for such loan. They then entered into lease agreements, and arranged for the payment of sales and payroll taxes. All agreements and arrangements were the subject of each party's written personal guarantee.

The restaurant opened in the summer of 1981. Betzold soon became unable to meet his share of contributions. An oral agreement was entered into between the parties, under which Beaupre and Kingen would cover the expenses and Betzold would execute promissory notes bearing interest in favor of Beaupre and Kingen to equalize the contributions.

The business fared poorly. Within a year, the corporation was unable to meet its obligations. The lending bank and the lessor of the business premises brought suit against the corporation and its stockholders as individuals for the unpaid indebtedness. Legal counsel was employed to defend those actions. When the lessor of the restaurant prevailed in its unlawful detainer action, the corporation was forced to close the restaurant. The corporation was then left with substantial liabilities to the bank, the equipment lessor, the Internal Revenue Service, and the attorneys.

Beaupre requested Kingen and Betzold to each pay one-third of the corporation's liabilities, but they refused. The law firm which had represented the corporation filed suit against the three shareholders for payment of its fees. Beaupre also requested Kingen and Betzold to each pay one-third of that cost, which was refused. Beaupre paid the attorneys in full for a bill of some $47,000, and that suit was dismissed. Beaupre then paid the corporation's other debts, approximately $193,000. Beaupre

then filed action against Kingen and Betzold, seeking to recover one-third of his payments from each of Kingen and Betzold. Beaupre also sought punitive damages from Kingen and Betzold.

Summary judgment was entered in favor of Beaupre on his claims based on payments made to the lending bank and the lessors of the business premises. No appeal is taken on those issues, and therefore they are not presented here. The remainder of Beaupre's claims, insofar as they are relevant to this appeal, went to jury trial on the questions of (1) whether the parties entered into an oral agreement to each pay an equal share of attorney's fees incurred in the defense of the creditors' claims against the corporation, and (2) whether plaintiff should be awarded punitive damages.

At the close of plaintiff Beaupre's case, Kingen and Betzold moved for directed verdicts, arguing that the alleged oral agreement violated the statute of frauds and that Beaupre had failed to present evidence sufficient to go to the jury on the question of punitive damages. The district court ruled as a matter of law that the statute of frauds was inapplicable to this case. He denied both motions for directed verdicts. The jury returned a verdict in favor of plaintiff Beaupre and awarded him punitive damages, but in an amount equal only to his attorney's fees incurred in bringing the case. The court entered judgment in accordance with the verdict, and additionally awarded Beaupre his costs. The court also found that Kingen and Betzold had defended the action frivolously and noted that, had the jury not awarded punitive damages to Beaupre in an amount sufficient to cover his attorney's fees, he, the trial court, would have awarded Beaupre attorney's fees.

As above noted, the only issues raised by Kingen and Betzold on this appeal are the judgment in favor of Beaupre for attorney's fees expended in defending the creditors' claims against the corporation, and the award of punitive damages. Beaupre has cross-appealed, alleging insufficiency of the punitive damages.

■ Kingen and Betzold contend here that the evidence was insufficient to support a jury finding that an oral contract existed which obligated them to each pay one-third of the attorney's fees incurred for the purpose of defending the creditors' lawsuits against the corporation. Upon appeal, the questions of the existence of and interpretation of a contract are within the discretion of the fact-finder, and a jury decision will not be overturned where supported by the evidence. *Gardner v. School Dist. No. 55,* 108 Idaho 434, 700 P.2d 56 (1985); *Werry v. Phillips Petroleum Co.,* 97 Idaho 130, 540 P.2d 792 (1975). We hold that sufficient evidence exists in the record to warrant submission of the oral contract issue to the jury.

Beaupre testified that he had discussed payment of the attorney's fees with Betzold and Kingen several times, and that each of the shareholders verbally agreed to personally cover one-third of the fees incurred, because "[c]learly ... we had to protect ourselves in the lawsuit ... that was the only way out." Similar testimony was received from two of the attorneys who participated in the defense of those lawsuits, to the effect that all three parties actively participated in or were kept advised of case strategy, settlement negotiations, and other legal matters. Each of the three parties had executed personal guarantees covering the corporate debts, which were the subject of the lawsuits, and hence the personal finances of all three parties were at stake. We hold that the jury verdict was based on substantial and competent evidence.

■ Kingen and Betzold next argue that the trial court erred in finding that the alleged oral agreement to pay attorney's fees did not fall within the statute of frauds, specifically I.C. § 9–505(2), which provides in pertinent part:

"**9–505. Certain agreements to be in writing.**—In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in

writing and subscribed by the party charged, or by his agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents:

\* \* \* \* \* \*

"2. A special promise to answer for the debt, default or miscarriage of another, *except in the cases provided for in the next section.*

\* \* \* " (Emphasis added.)

Exceptions to the requirements of I.C. § 9–505(2) are contained in I.C. § 9–506, which provides in pertinent part, as follows:

**9–506. Original obligations.—Writing not needed.**—A promise to answer for the obligation of another, in any of the following cases, is deemed an *original obligation of the promisor,* and *need not be in writing:*

"1. Where the promise is made by one who has received property of another upon an undertaking to apply it pursuant to such promise; or by one who has received a discharge from an obligation in whole or in part, in consideration of such promise.

"2. *Where the creditor parts with value, or enters into an obligation,* in consideration of the obligations in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made, his surety.

"3. Where the promise, being for an antecedent obligation of another, is made upon the consideration that the party receiving it cancels the antecedent obligation, accepting the new promise as a substitute therefor; or upon the consideration that the party receiving it releases the property of another from a levy, or his person from imprisonment under an execution on a judgment obtained upon the antecedent obligation; or upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation, or from another person.

\* \* \* " (Emphasis added.)

The trial court held that sufficient evidence had been presented to support a finding that the oral agreement in question was an original one under the provisions of I.C. § 9–506, rather than a collateral agreement within the terms of I.C. § 9–505(2), and that therefore the statute of frauds did not bar plaintiff Beaupre's claims for reimbursement of moneys expended for attorney's fees. We agree.

The jury found that the parties had mutually agreed to pay the attorney's fees incurred in untangling the legal problems facing Colo-Robin Corporation. Such agreement was made separately and remotely, both as to intent and as to time, from the earlier *written* promises to guarantee the obligations of the corporation, *i.e.,* bank loans, lease contracts, and tax liabilities. Furthermore, although the subject of the creditors' lawsuits was in one sense the collection of a debt against the corporation, because of the personal written guarantees of each of the parties, it was equally an action against each of them. Although the defense of the action might conceivably benefit the corporation, more realistically the defense of the lawsuits was for the benefit of Beaupre, Kingen and Betzold in their personal capacities and for their personal pocketbooks. The jury could well have believed that Beaupre hired the attorneys in reliance upon Betzold's and Kingen's separate promises to personally pay their proportionate share of such bill.

Although Kingen and Betzold rely upon *Reed v. Samuels,* 43 Idaho 55, 249 P. 893 (1926), we hold that *Reed* is distinguishable from the instant case. In *Reed,* plaintiff creditors of a corporation sought to collect on the unwritten promise of Samuels to personally cover the corporation's outstanding debt to plaintiffs. There it was held that no consideration was received by Samuels that would take the oral promise outside of the statute of frauds. In the instant case, the consideration moving to Kingen and Betzold was obviously the opportunity to reduce or settle debts upon

which Kingen and Betzold were personally liable because of their personal guarantees.

Whether an oral promise constitutes a collateral or an original obligation, for the purposes of the statute of frauds, is generally a question for the finder of fact. *Dalby v. Kennedy,* 94 Idaho 72, 481 P.2d 30 (1971). *See also Wright v. Wright,* 97 Idaho 439, 546 P.2d 394 (1976). The trial judge is the arbiter of whether the evidence indicating an original obligation is sufficient to allow the statute of frauds question to go to the jury. *McQuade v. Edward Rutledge Timber Co.,* 46 Idaho 471, 268 P. 570 (1928). Here the trial court ruled as a matter of law that the statute of frauds did not apply. That ruling is supported by the evidence, and the trial court did not abuse his discretion in refusing to direct a verdict for Kingen and Betzold on the basis of the statute of frauds.

Betzold and Kingen argue error as to the trial court's instructions to the jury on punitive damages and the validity of an award of punitive damages. Kingen and Betzold assert primarily that the instructions of the trial court do not adequately emphasize the theory of Idaho law that punitive damages are disfavored and are to be awarded only for exceptionally offensive or malicious conduct. We disagree. The instructions clearly impart to the jury that punitive damages are only to be narrowly awarded, and indeed not awarded unless a heavy burden of proof is met. They further require that an evil motive be found before defendants are charged with punitive damages and that plaintiff must show "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." *Cheney v. Palos Verdes Inv. Corp.,* 104 Idaho 897, 905, 665 P.2d 661, 669 (1983), *quoting Hatfield v. Max Rouse & Sons Northwest,* 100 Idaho 840, 606 P.2d 944 (1980). *See also Umphrey v. Sprinkel,* 106 Idaho 700, 682 P.2d 1247 (1983).

On the other hand, Beaupre cross-appeals from the award of punitive damages, arguing that it is inadequate. Inexplicably, Beaupre does not argue or seek the reversal of the award for punitive damages on the basis that the trial court's instructions do not conform to *Umphrey* or *Cheney.* Beaupre does not assert that the trial court erred in its instructions to the jury. Nor does the record disclose any objection by Beaupre to the instructions of the trial court in that regard. Beaupre argues rather that, although the trial court instructed the jury in the terms of *Cox v. Stolworthy,* 94 Idaho 683, 496 P.2d 682 (1972), and *Jolley v. Puregro Co.,* 94 Idaho 702, 496 P.2d 939 (1972), the jury did not award sufficient damages under the criteria presented in these cases, because, although awarding his attorney's fees, the jury failed to award him any damages for time lost in pursuing the litigation.

Although *Umphrey* and *Cheney* both predicated the trial of this case, those cases were apparently not called to the attention of the trial court, nor are the new standards established by those cases argued as a basis for evaluating the jury instruction challenged on this appeal. Therefore, we will not consider Beaupre's assertions of error on cross-appeal.

We have reviewed the remaining issues raised by the parties and find them to be without merit. The decision of the trial court is affirmed. Beaupre is awarded his costs incurred in responding to this appeal, which are to be paid by Kingen and Betzold. No other costs or attorney's fees on appeal or cross-appeal.

DONALDSON, C.J., and BISTLINE and HUNTLEY, JJ., concur.

BAKES, Justice, concurring in part and dissenting in part:

I concur in the result reached by the majority insofar as the statute of frauds question is concerned, albeit on somewhat different grounds. I would hold that the statute of frauds is not implicated in the first instance under the facts of this case. There is no alleged oral promise or agreement "to answer for the debt, default or miscarriage of another...." I.C. § 9–505.

The oral agreement in the present case was an original undertaking and not the undertaking of a surety to answer to a *creditor* of a principal debtor. The alleged oral agreement inured to the direct benefit of all those entering into it. The individual interests of both Kingen and Betzold were represented and sought to be protected by the litigation in question. Thus, disposition of the case does not require an inquiry as to whether or not the agreement falls within an exception to the statute. The trial court properly ruled as a matter of law that no issue of fact existed to present the statute of frauds question to the jury.

I dissent as to the majority's holding that punitive damages were properly awarded in the present case. The most recent statement of the standard of proof required for punitive damages was set out in *Cheney v. Palos Verdes Investment Corp.*, 104 Idaho 897, 665 P.2d 661 (1983), wherein this Court stated:

> "An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was 'an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences.' [Citations omitted.] The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be termed 'malice, oppression, fraud or gross negligence' [citations omitted]." 104 Idaho at 905, 665 P.2d at 669.

Thus, in essence, punitive damages are "a means of deterring *tortious conduct* generally." *Boise Dodge, Inc. v. Clark,* 92 Idaho 902, 908, 453 P.2d 551, 557 (1969) (emphasis added).

There is no showing in this record that there was any such conduct on the part of defendants. The most that is shown with regard to defendant Betzold was that he became "unable to meet his share of [the] contributions," as the majority correctly observes. Ante at page 521. Inability to meet one's obligations does not qualify for the awarding of punitive damages. The poor will certainly suffer by today's decision.

The most that can be gathered concerning defendant Kingen's alleged misconduct is that he erroneously asserted the defense of statute of frauds to the oral obligation. However, punitive damages are awarded for conduct which leads to and is the subject of the litigation, and not for how the trial is conducted, including which legal defenses are raised. While the bad faith, frivolous or unreasonable assertion of an affirmative defense or otherwise bringing a frivolous suit may be proper grounds for the court to award attorney fees as costs pursuant to I.C. § 12–121 and I.R.C.P. 54(e)(1), it is not a matter to submit to the jury for an award of punitive damages as was done in this case.

Even though this case was tried subsequent to the *Cheney* case, the instructions and award were based upon pre-*Cheney* law and standards. For that reason alone, the award of punitive damages should be reversed, as the Court did in *Cheney.* The majority gives no explanation of why the *Cheney* case is not followed, unless it too has now fallen into disfavor. In any event, unless there is more to this case than the majority states, it is clear beyond cavil that the facts of this case do not satisfy the standards of the *Cheney* case for the award of punitive damages.

Accordingly, I would affirm the judgment, except as to the award of punitive damages.