*406 J. JONES, Justice,
dissenting.
I dissent from the Court’s opinion for two reasons: In my estimation the check made payable by the Respondents to Mickelsen Construction (Mickelsen) is a sufficient writing to satisfy I.C. § 9-505, and, as the district court appears to have concluded, the Complaint was adequate to invoke the provisions of I.C. § 9-506. I have a concern that the practicing bar may interpret our holding as stepping back to a degree from our previous decisions on notice pleading. And, while I strongly believe that I.R.C.P. 56 is a valuable tool for weeding out non-meritorious cases, it appears to me that there are enough unanswered questions in this case to allow it to be decided at a trial upon the merits. There was sufficient evidence in the record for Mickelsen to successfully resist summary judgment. Before proceeding with the merits, it is appropriate to first consider the allegations of the Complaint.

THE COMPLAINT

The conclusions reached in the Court’s opinion are based on an overly-striet reading of the Complaint — the word “guarantee” in the Complaint is deemed by the Court to be a term of art; because of the use of this term of art, the Complaint alleges only one theory, the theory of enforcing a guaranty; because the Complaint states a guaranty theory, any writing sufficient to comply with I.C. § 9-505(2) must also contain each and every element necessary for an enforceable guaranty; and because the Complaint alleges a single specific theory, it can’t be read broadly enough to encompass any other claim, including a claim within I.C. § 9-506. Such a strict, technical reading of the Complaint is not required under the rules or previous decisions of this Court.
Mickelsen’s Complaint must be considered under Idaho’s liberal notice pleading standard in order to determine the claims encompassed therein, rather than under a rigid, technical reading. “The Idaho Rules of Civil Procedure set forth a system of notice pleading intended to free litigants from what were once rigid pleading requirements.” Carrillo v. Boise Tire Co., Inc., 152 Idaho 741, 751, 274 P.3d 1256, 1266 (2012). Therefore, we have frequently held that, “[ejourts should make every intendment to sustain a complaint that contains a concise statement of the facts constituting the cause of action and a demand for relief.” Id. at 752, 274 P.3d at 1267. “A party’s pleadings should be liberally construed to secure a just, speedy and inexpensive resolution of the case.” Youngblood v. Higbee, 145 Idaho 665, 668, 182 P.3d 1199, 1202 (2008). Therefore, “[ujnder notice pleading, a party is no longer slavishly bound to stating particular theories in its pleadings ____ the general policy behind the current rules of civil procedure is to provide every litigant his or her day in court.” Brown v. City of Pocatello, 148 Idaho 802, 807, 229 P.3d 1164, 1169 (2010) (internal quotations and citations omitted). “Our liberal notice pleading standard is intended to see justice done, and prevent the dismissal of a valid claim for a mere technical failing.” Id. at 809, 229 P.3d at 1171. Thus, even if a count of a complaint does not state a specific factual theory of recovery, “[njotiee pleading frees the parties from pleading particular issues or theories, and allows parties to get through the courthouse door merely by stating claims upon which relief can be granted.” Mortensen v. Stewart Title Guar. Co., 149 Idaho 437, 444, 235 P.3d 387, 394 (2010).
The Court correctly notes that Mickelsen used the word “guarantee” twice in the Complaint, but incorrectly determines this to be a term of art, limiting Mickelsen’s theory of recovery. The words “guaranty” and “guarantee” are often used interchangeably by lawyers and courts. However, getting into technicalities, both spellings generally merit a separate definition in dictionaries and are generally defined in a slightly different fashion. Generally, “guarantee” is defined more broadly and to include “guaranty,” while “guaranty” is defined more narrowly and not to include “guarantee.” For example, Webster’s defines “guarantee” as: “1 guaranty 2 a pledge or assurance; specif., a) a pledge that something is as represented and will be replaced if it does not meet specifications b) a positive assurance that something will be done in the manner specified 3 a guarantor 4 a person who receives a *407 guaranty 5 a sign or portent.” Webster’s New World Dictionary 598 (3rd College Ed. 1988). On the other hand “guaranty” is defined as: “1 a pledge by which a person commits himself to the payment of another’s debt or the fulfillment of another’s obligation in the event of default 2 an agreement that secures the existence or maintenance of something 3 something given or held as security 4 a guarantor.” Id. Our decisions have often intermixed the two words but, as a general matter, guaranty is used more as a term of art to connote a guaranty agreement, where one promises to pay the indebtedness of another upon the other’s default, while guarantee is often given a broader reading — guarantee of rights, guarantee of employment, guarantee of payment, guarantee of intentions, and the like.[6] Of interest here is the fact that Mickelsen consistently employs “guarantee” in its Complaint and written arguments, while the Court consistently employs the narrower term, “guaranty,” in its opinion. At the summary judgment stage of a case, technicalities should be decided in favor of the defending party. It is fair to infer that Mickelsen was using guarantee in its broader sense, rather that the narrow, term-of-art, technical sense.
Moreover, in the two instances where Mickelsen employs the word “guarantee” in the Complaint, it is used as a verb. In the critical instances where “guaranty” appears in the Court’s opinion, it is employed as a noun. The above descriptions for both words are for the noun meanings. Webster’s states as follows, where guarantee is used as a verb: “1 to give a guarantee or guaranty for [to guarantee a product/ 2 to state with confidence; promise [to guarantee that a thing will be done/.” Id. With these varying definitions, it does not seem appropriate to consider “guarantee,” as used by Mickelsen, to be a term of art.
Given our liberal pleading standard, the fact that litigants need not allege specific theories, and the fact that Mickelsen used the more broadly defined guarantee rather than the more narrowly defined guaranty, it seems counter to this Court’s practices to so strictly read and limit the Complaint. Further, the Complaint alleges facts that are inconsistent with the strict reading limiting it to a guaranty theory. The Complaint states that Horrocks agreed to guarantee Accelerated’s credit card payment and, in order to do so, wrote a check in the amount of $34,980. But, then the Complaint alleges that, “The cheek written by Lesa D. Horrocks on the account of Sunshine Secretarial Services, Inc. and Lesa D. Horrocks bounced and despite numerous demands the checking account on which the check was written never had sufficient funds for the check.” The Complaint then incorporates a copy of the check and two notices from the credit union on which the checks were drawn saying the account contained insufficient funds — one dated January 26, 2009, and the other on January 27, 2009. On its face, the check is an unconditional order to pay the sum of $34,980 to Mickelsen. See I.C. § 28-3-104(1) and 106(1). An immediately negotiable check, bearing the date of the agreement, is inconsistent with a guaranty theory. Liability on a guaranty only matures when the principal obligor fails to perform. The Complaint makes no mention of Accelerated’s remaining obligation, if any, for the indebtedness. Nor does the Complaint allege that Respondents’ liability matured because of anyone’s default. The Complaint merely notes that the check bounced twice for insufficient funds but does not make mention of Accelerated’s nonperformance. Again, this is inconsistent with a guaranty theory. It would be an odd guaranty where the guarantor produced immediate payment.
Although Mickelsen used the word “guarantee” in briefing both before the district court and this Court, the opening statement in its memorandum submitted in opposition to Respondents’ motion for summary judgment summarized its opposition to the summary judgment without the use of that word. Mickelsen argued:
Accelerated Paving, Inc. was indebted to Mickelson for materials supplied on a pro *408 ject. When Miekelson Construction threatened to lien the job, Accelerated Paving offered to pay with a credit card. Miekelson Construction would only accept a credit card if a third party gave a check to cover what was owed. Lesa Horrocks wrote a check on an account bearing the name Lesa Horrocks/Sunshine Secretarial Services believing that American Express had approved the transaction and would fund the credit card transaction to her account. The check is a sufficient writing to satisfy the statute or frauds. However, if it is not then this is an original obligation of Horrocks/Sunshine Secretarial which does not need to comply with the Statute of Frauds.
It is clear that Mickelsen was urging alternate readings of its Complaint — either Respondents had made a promise to pay Accelerated’s debt with the check, or they had assumed primary responsibility for the debt. In either event, the check was to be Mickelsen’s source of payment. While the Respondents contended in their motion for summary judgment and supporting affidavit that neither of them had intended to guarantee Accelerated’s indebtedness, they did not argue whether or not there was a valid guaranty agreement. The focus of their motion was on whether or not the check satisfied the writing requirements of I.C. § 9-505. They stated that the check was intended by the Respondents to pay Mickelsen for Accelerated’s indebtedness. According to the Respondents, the check was to be Mickelsen’s payment for the debt, but only after the credit card transaction was approved. Nothing on the check so indicates, however. In their reply brief in district court, Respondents state, “Sunshine, acting as a facilitator, relying upon American Express to cover the check, ran the transaction and wrote a check with Mickelsen with the express understanding that American Express would immediately compensate Sunshine for the transaction.”

RESPONDENTS’ CHECK SATISFIES I.C. § 9-505

There is no dispute in this case that Respondents’ check was signed on January 8, 2009, made payable to Mickelsen in the amount of $34,980, and delivered to Mickelsen on that same date. There is no contention that the check was not immediately negotiable. There can be no contention that the check contains any language indicating that negotiability is based on any condition or subject to any sort of limitation. Horrocks did not follow a suggestion by Mickelsen to postdate the check.[7] The parties only dispute the purport or nature of any oral understandings regarding negotiability.
Being a promise to answer for the debt of another, the cheek was required to comply with I.C. § 9-505. That statute provides that, “[a] special promise to answer for the debt ... of another, except in the eases provided for in section 9-506, Idaho Code ... is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged.” I.C. § 9-505(2). There is no language in the statute that limits its application to a guaranty. Indeed, neither guaranty nor guarantee appear anywhere in the statute. A guaranty is certainly within the statute but, just because an agreement is within the statute, does not automatically make it a guaranty. The statute does not require that a writing, wherein one promises to answer for another’s debt, contain all of the elements required for a guaranty. In other words, a guaranty is one type of promise encompassed within I.C. § 9-505(2), but other types of promises are also encompassed within the statute.
In its opinion, the Court concludes, in essence, that because Mickelsen employed the word “guarantee” in its Complaint and in some of its written briefing, the written agreement or memorandum was required to contain each and every element of a guaranty agreement in order to comply with the statute.
*409 I disagree. In my estimation, the use of “guarantee” in the Complaint did not limit Miekelsen to a guaranty theory, requiring that the writing or memorandum contain all the elements required for a guaranty agreement. Reading the Complaint broadly and drawing all reasonable inferences in favor of Miekelsen, the Complaint can easily be read as alleging a special promise to answer for the debt of another, without alleging the promise constituted a formal guaranty agreement.[8]
The check is a pre-printed form containing the names of both Respondents, made payable to Miekelsen, in the amount of $34,980, and signed by Horrocks. The check indicates it is for “Accel.” On its face, it is unconditionally and immediately negotiable. It does not indicate that any other party must default or nonperform before it can be cashed. While the record indicates that the parties discussed various conditions that might bear upon the negotiability of the cheek, none of those conditions are stated on its face. I believe this writing adequately states the required elements of a special promise to answer for the debt of another. The cheek could have been submitted for collection that very day and, had there been sufficient funds in the account, Accelerated’s debt would have been paid. No other writing was required in order to accomplish that end.
Indeed, even if the check was also required to contain all elements of a guaranty, I can’t imagine what more would be needed. Again, it is not contested that the check was intended to constitute payment to Miekelsen for the Accelerated debt. The only question is what the parties orally agreed as far as to when or under what conditions that would occur. If the parties had wished to limit or condition negotiability, they could have done so by placing some appropriate language on the face of the check. Indeed, the check was written by Horrocks, who had exclusive control over the language that went into it. Generally, we construe the language of the instrument against the drafter. However, Respondents essentially ask the Court to construe it against the person in whose favor the instrument was drafted and to whom it was delivered. Their invitation should be declined. Certainly, the record shows sufficient compliance with I.C. § 9-505(2) to survive summary judgment.

THE COMPLAINT WAS ADEQUATE TO INVOKE I.C. § 9-506

The district court granted summary judgment against Miekelsen primarily on the basis of I.C. § 9-506(2). Its route to that destination is interesting. At the commencement of the hearing on Respondents’ motion for summary judgment, the district judge commented:
I’ve read all of the briefs. I’ve read the affidavits---- First of all, if the question were whether or not an issue of fact exists or whether or not Ms. Horrocks made a guarantee, then the motion would be denied instantaneously. There clearly is from the question — from the affidavits and construing the facts in the favor of the nonmoving party which is the plaintiff in this case, there clearly is a question of fact as to whether or not Ms. Horrocks had guaranteed this particular debt. But I don’t think that’s the issue, and so I — I’m just telling you that right up front.
Then, in its written decision following the hearing, the court observed:
The various affidavits, particularly of [Miekelsen] and [Respondents], create a genuine issue of material fact as to whether [Respondents] guaranteed the Accelerated debt. If that was the only issue upon which the summary judgment motion was based, the motion would be denied. But, as noted above, that is not the primary issue raised by the motion. For purposes of this opinion, the Court accepts as true *410 that Horrocks agreed to guarantee the Accelerated debt.
The district court then proceeded to consider whether the agreement was exempt from the writing requirement of I.C. § 9-505(2), based on I.C. § 9-506, particularly subsections (1), (2), and (3). Mickelsen had asserted, both in its written briefing opposing summary judgment and in oral argument before the district court, that those subsections of I.C. § 9-506 applied. Even without that, the district court could have made the connection because I.C. § 9-505(2) specifically excepts from its coverage cases “provided for in section 9-506, Idaho Code.” I.C. § 9-505(2). In any event, the majority of the argument and colloquy at the summary judgment hearing was devoted to the I.C. § 9-506 issue. The issue of whether the check complied with I.C. § 9-505(2) was discussed secondarily, while there was practically no discussion as to whether or not there was either a guarantee or a guaranty.
The district court erroneously concluded that I.C. § 9-506 required “beneficial consideration” to flow to the Respondents in exchange for any promise to pay Mickelsen, that there was a failure to show any such consideration, and that therefore Mickelsen could not rely on section 9-506. The district court primarily based its holding Reed v. Samuels, 43 Idaho 55, 249 P. 893 (1926). In its opinion, this Court correctly analyzes Reed and overrules it and its progeny to the extent they hold that the phrase “the creditor parts with value” requires that the value inure to the benefit of the party making the promise. I agree with that part of the opinion.
However, I disagree that the Complaint was not sufficient to allege a claim within I.C. § 9-506.[9] In this regard, I am in agreement with the district court, which appeared to believe that the Complaint did allege such a claim and proceeded to grant summary judgment based on that statute.
The district court read the Complaint as seeking to recover on a promise to answer for the debt of another, aside from the question of whether the promise constituted a formal guaranty, and the Respondents seem to have read the Complaint in the same fashion. In their memorandum supporting summary judgment, the Respondents focus solely on the question of whether the check satisfied the requirements of I.C. § 9-505(2), not on whether there was an enforceable guaranty contract. “The key issue in determining the validity of a complaint is whether the adverse party is put on notice of the claims brought against it.” Gibson v. Ada Cnty. Sheriff’s Dept., 139 Idaho 5, 9, 72 P.3d 845, 849 (2003). Respondents appear to have known Mickelsen was pursuing a claim for recovery on a promise to answer for the debt of another, whether or not it constituted a formal guaranty agreement. At the summary judgment hearing, when the district court observed that the crux of the Complaint was an action to recover on an original obligation under I.C. § 9-506(2), neither party objected. Respondents contended it was not such an agreement, while Mickelsen contended it was. The important point is that both parties had an opportunity to present their positions on the issue and neither objected to the district court’s determination that the Complaint stated a claim within I.C. § 9-506(2).
Drawing all inferences in favor of Mickelsen, the Complaint is perfectly adequate to assert a claim to recover on a promise to answer for the indebtedness of another, which would be within I.C. § 9-505, or, alternately, a claim to hold Respondents liable as the principal debtor within I.C. § 9-506(2). Storer v. Heitfeld, 19 Idaho 170, 113 P. 80 (1910) does not dictate otherwise. First, the Storer case was decided during the dark old days of code pleading, where a party could be bounced out of court for the slightest misstep or wording error. This Court has long since adopted the notice pleading standard, which does not require laser precision in wording a *411 complaint and which allows demands for relief in the alternative.' I.R.C.P. 8(a)(1). Second, the Court’s application of Storer is based on a faulty premise — that “the complaint in the instant case only alleged a guaranty, it did not allege a claim under Idaho Code section 9-506(2).” Third, although a party probably cannot be both a guarantor and the principal debtor at the same time, Mickelsen’s position at the summary judgment stage, based on alternate readings of the allegations of the Complaint was that Respondents may have been one or the other but not both.

CONCLUSION

While this not a particularly important case, even a case of modest legal significance can produce an unfortunate precedent. In my estimation, this decision, with its narrow, technical reading of the Complaint, takes a step back from Idaho’s liberal notice pleading standard. By determining the outcome based on a single non-teehnical word in the Complaint and overlooking the significance of allegations and incorporated documents that are inconsistent with that word, we take a slight step back to the old code pleading days.
Furthermore, the case reaches this Court in a somewhat unusual process and leaves a number of questions unanswered. The district court determined that conflicting evidentiary inferences as to whether or not there was a guaranty agreement precluded summary judgment to the Respondents on that issue (even though they had not particularly sought summary judgment on that issue — they sought summary judgment on the ground that the check did not satisfy I.C. § 9-505(2)). Rather, the district court decided the summary judgment, incorrectly, on another issue not presented by the Respondents in their moving papers — I.C. § 9-506(2). The district court obviously considered the Complaint to adequately assert a claim encompassed within that code section. This Court disagreed in its opinion. I believe the district court was correct in that respect.
Although Mickelsen did not specifically invoke an estoppel doctrine, the Complaint could certainly be read in that regard.[10] In essence, Mickelsen appears to be saying that he had lien rights that would have secured payment of the indebtedness owing by Accelerated, that Accelerated and Respondents caused Mickelsen to relinquish those lien rights based on Respondents’ assurances, and that Mickelsen was thereby prejudiced. What would be worth exploring at trial is what could have prompted Respondents to issue an immediately negotiable cheek, if all they intended to do was to facilitate a transaction as they claimed. Sunshine was Accelerated’s landlord and a provider of other services, but it is not entirely clear why it or Horrocks would have subjected themselves to this potential liability, if they were just being helpful. Did Mickelsen forego its lien rights based on affirmative representations by Respondents that the credit card had been cleared? The inference in the Complaint is that it did. And, it is not clear whether Mickelsen did, in fact, forego its lien rights. The transaction took place on January 8, 2009, and it was apparently clear by January 26, 2009, when Mickelsen first sought to negotiate the check, that things had gone awry. One wonders exactly when the lien rights expired. And, what actually was the oral agreement between or among the parties in the event the credit card charge was not honored by American Express, as Horrocks thought it had been. Was the check to be returned or cashed? It is obvious the parties had differing opinions after American Express declined payment. In one instance Respondents assert that the check was not to be cashed until American Express deposited the money but in other instances they state that it was understood American Express would “compensate Sunshine for the transaction,” and that Sunshine wrote the check “relying to its detriment, on American Express and Accelerated.” These *412 are questions that can best be answered at trial.
For the foregoing reasons, I believe that summary judgment was inappropriately granted by the district court and that the grounds upon which this Court upholds it are insufficient. I would vacate the summary judgment and remand for further proceedings.

. A Westlaw word search indicates that guarantee has been used substantially more often than guaranty by Idaho's appellate courts. From November 2012 to the present, appellate decisions used guarantee in 42 cases, while guaranty was used in only 8.

. In his affidavit opposing summary judgment, Mr. Mickelsen asserted that the check was to be held by him until the credit card transaction was concluded and then to be returned to Horrocks. However, both parties argued to the district court during the summary judgment hearing that the check was to constitute payment of the Accelerated debt. They disputed the terms of any oral understanding as to when and under what conditions the check was to be negotiated.

. In its decision, the district court appears to have taken this approach. As previously noted, the court indicated that conflicting facts in the record precluded issuing a summary judgment against Miekelsen on a guaranty theory, but then the district court went on to consider whether the check met the requirements of I.C. § 9-505(2). It is apparent the court concluded that an agreement to pay the debt of another does not have to be a formal guaranty agreement in order to fall within the coverage of I.C. § 9-505(2).

. We said in Brown that, "a complaint need not identify the statutory basis for relief nor include a formal statement of the cause of action being pursued,” so long as there is some indication of the theory of recovery supporting the relief sought. 148 Idaho at 808, 229 P.3d at 1170. The relief sought here was recovery of the amount of Accelerated’s obligation. The relief sought was not dependent on whether the agreement was oral or written.

. In Brown, we said, "Although never mentioning promissory estoppel by name, the short and plain statement succinctly offered allegations that, if true, could meet the elements of a claim for promissory estoppel.” 148 Idaho at 808, 229 P.3d at 1170. Presumably, the same would apply with regard to equitable estoppel.