David W.M. FRYE, Respondent,

v.

INDEPENDENT SCHOOL DISTRICT
NO. 625, St. Paul, Minnesota,
Petitioner, Appellant.

No. C4–91–2085.

Supreme Court of Minnesota.

Dec. 18, 1992.

As Amended on Denial of
Rehearing Feb. 3, 1993.

Jeffrey G. Lalla, Gen. Counsel, Independent School Dist. No. 625, St. Paul, for appellant.

Douglas L. Skor, Neal T. Buethe, Briggs and Morgan, P.A., St. Paul, for respondent.

SIMONETT, Justice.

We conclude respondent, an employee of the St. Paul School District, was not, as a matter of law, a teacher for purposes of the Teacher Tenure Act; we reverse the court of appeals' decision remanding the case for a factfinding hearing.

Respondent David W.M. Frye has been employed by appellant Independent School District No. 625 (St. Paul) for more than 30 years, serving as teacher, counselor, assistant principal and principal. In 1983, respondent was appointed Director of Secondary Curriculum and Instruction. In 1987, he was further promoted to Associate Superintendent for Curriculum and Instruction. These appointments were for no definite term.

In June 1991 the school board approved the new superintendent's restructuring of the school district's administration. Respondent's position was abolished, as was the companion position of Associate Superintendent for Administrative Services. In their place, three new positions were created: Assistant Superintendent, Teaching and Learning; Assistant Superintendent, Planning and Support Services; and Assistant Superintendent, Fiscal Affairs and Operations.

Respondent contended he was a "teacher" within the meaning of the Tenure Act while serving as associate superintendent. Consequently, he asked that he be assigned to the new position of Assistant Superintendent, Teaching and Learning or, alternatively, that he be allowed to bump to one of the other positions in the "superintendency" department.

Respondent Frye's requests were not honored; instead, respondent was unilaterally reassigned by the superintendent to the position of principal at the Area Learning Center. This meant a reduction in respondent's pay and benefits. In a letter to respondent prior to the reorganization, the superintendent explained that "the new leadership * * * provided [under the plan] will be critical to my administration and the accomplishment of the Board's mission and goal statements." Thus, a purpose of the restructuring was to bring new talent and energy to the administration in pursuit of newly adopted school district policies and goals.

Respondent took the principalship, but reserved the right to pursue his asserted tenure rights. He claimed he had a continuing contract with the district as associate superintendent, and that he was entitled to a hearing before any reassignment. At the very least, respondent claimed he was entitled to a hearing on his job status so a proper record could be made for an appeal. The school district refused to hold a hearing, and respondent sought review by certiorari to the court of appeals. The court of appeals, in an unpublished opinion, agreed that a hearing was necessary to determine whether or not respondent was a "teacher," and remanded the case to the school board. We granted the school district's petition for further review.

Minn.Stat. § 125.17 (1990) is the teacher tenure act that applies to all school districts in cities of the first class. Tenure covers only teachers, and subd. 1(a) provides in pertinent part:

The term 'teacher' includes every person regularly employed, as a principal, or to give instruction in a classroom, or to superintend or supervise classroom instruction, or as placement teacher and visiting teacher.

Respondent Frye claims the position he held was "to superintend or supervise classroom instruction," and, therefore, he was a "teacher."

 The issue here must be understood against the public policy rationale of teacher tenure. Teachers, whose primary task is to impart knowledge to students through personal interaction, are given the security of tenure to assure their academic freedom and to protect them from arbitrary demotions and discharges that are unrelated to their ability to perform their prescribed duties. *Downing v. Ind. Sch. Dist. No. 9,* 207 Minn. 292, 291 N.W. 613 (1940); *Perry v. Ind. Sch. Dist. No. 696,* 297 Minn. 197, 210 N.W.2d 283 (1973). On the other hand, tenure was not intended to create a system which would deprive school boards of their assigned role effectively to administer and operate the public school system. *See, e.g., McSherry v. City of St. Paul,* 202 Minn. 102, 277 N.W. 541 (1938); *Frisk v. Board of Ed. of City of Duluth,* 246 Minn. 366, 75 N.W.2d 504 (1956). The Teacher Tenure Act must not be construed, therefore, to impair the right of a school board to deter-

mine policy in the administration of school affairs, or to transfer from school boards to teachers and courts the management, supervision and control of school systems. *Eelkema v. Board of Ed. of City of Duluth,* 215 Minn. 590, 11 N.W.2d 76 (1943).

■ Consequently, the Tenure Act applies only to those expressly enumerated therein. Anyone not defined as protected by the Act itself is not entitled to claim the rights it provides. *See Board of Ed. of City of Minneapolis v. Sand,* 227 Minn. 202, 34 N.W.2d 689 (1948). No one else is covered under the Teacher Tenure Act, as this court has consistently held in denying tenure to school basketball coaches, *Stang v. Ind. Sch. Dist. No. 191,* 256 N.W.2d 82 (Minn.1977), administrative assistants to superintendents, *Sand, supra,* and superintendents, *Eelkema, supra.*

Significantly, the statutory definition of "teacher" does not include superintendent, as the attorney general pointed out long ago, Op.Atty.Gen. No. 172, Nov. 10, 1932, and the legislature, notwithstanding at least a dozen changes and revisions of the school code since then, has not seen fit to change the definition. *See Eelkema.* Interestingly, under recent legislative changes, superintendents in all school districts may, however, negotiate an employment contract for a term of up to 3 years, *see* Minn.Stat. § 123.34, subd. 9 (1992).

Still, the statutory definition of teacher includes those "regularly employed * * * to superintend or supervise classroom instruction." It is on this clause that respondent Frye, and others before him, have based their claims for teacher tenure. In *Eelkema,* however, we pointed out that the superintending and supervising in this clause refer to classroom instruction. 215 Minn. at 594, 11 N.W.2d at 77. Furthermore, in *Sand* we said the Act did not cover those primarily involved in the management and administration of school matters. 227 Minn. at 209, 34 N.W.2d at 693. Or, as we also said in *Sand,* "A part partakes of the whole. [The employee's] work as administrative assistant to the superintendent having been part of and incidental to the work of the superintendent, it partook of the nature of that work." *Id.,* 227 Minn. at 209, 34 N.W.2d at 694.

■ As a matter of law, then, a superintendent is not a teacher under the Tenure Act. Neither are associates who share in the superintendent's managerial responsibilities, whether those duties involve district finances or educational programs and curricula. Principals, who exercise considerable managerial duties, are deemed teachers, but, significantly, this is because they are expressly named in the statutory definition. "[T]o superintend or supervise classroom instruction" refers, then, to a position (whatever may be the title) which involves close proximity to and substantial direct involvement with classroom instruction.

■ In this case respondent Frye points to the title of the position he had held, namely, Associate Superintendent for Curriculum and Instruction. He cites the posted job description which, among its 15 points, lists "Provision of adequate supervisory service in the elementary, secondary and special education programs" and "Give direction to the Department of Personnel in recommending the selection, evaluation, and dismissal * * * of employees assigned to the elementary, secondary and special education programs." Respondent claims his duties included such involvement with teachers and classroom instruction as teacher hiring, evaluation and discipline and selection of classroom material, plus school visitation with teachers in the classroom and with principals. At least, argues respondent, he is entitled to a factfinding hearing on whether he qualifies as a teacher.

The court of appeals agreed with respondent on the need for a hearing, citing *State ex rel. Haak v. Board of Ed. of Ind. Sch. Dist. No. 625,* 367 N.W.2d 461 (Minn.1985). In *Haak* this court ordered a hearing on whether the Supervisor of Science and the Supervisor of Special Education, Special Learning, and Behavioral Problems were teachers within the Tenure Act. We said, rather cryptically, that "the record contains a factual dispute, and we do not make findings of fact." *Id.* at 465. Whatever

 

the record in *Haak* (it appears the positions were of low rank and with ambiguous job descriptions), here the record, although sparse, is complete.

The school district has what it calls the "Superintendency," a grouping of some 20 top echelon administrators. At the times here material, the superintendency had its own established terms and conditions of employment. The group included the superintendent, two associate superintendents (one of whom was David Frye), executive directors, directors, associate directors and other administrators. Some five to seven members of this group reported directly to respondent. The principals from each of the more than 50 schools in the district reported to the Directors of Elementary and Secondary Curriculum, who in turn reported to respondent.

Here respondent's position was firmly embedded in the district's organizational structure as part of the "superintendency." Respondent's job description is couched in managerial terms of "implementing," "coordinating" and "giv[ing] direction to the Department of Personnel." Indeed, the last assigned duty in the list of 15 is "Such other duties that may be assigned by the Superintendent of Schools." It is evident that respondent's position was far removed from the classroom; any actual contact respondent might have had with the classroom was only indirect, peripheral, and subordinate to his designated management responsibilities. We believe this organizational structure is controlling on the nature of respondent's position, and no further record is needed.

Having in mind the case law interpreting the statutory definition of teacher and the public policy behind the Teacher Tenure Act not to tie the hands of the school board in implementing new policies and educational strategies, we conclude, and hold, that administrators, directors, and supervisors primarily involved in the superintendency of the school district, including respondent, are not teachers within the meaning of the Teacher Tenure Act. Respon-

dent, therefore, is not entitled to a hearing on the nature of his position.

Reversed.

YETKA, J., took no part in the consideration or decision of this case.