Delores CLOUD, Relator,

v.

**INDEPENDENT SCHOOL DISTRICT NO. 38, RED LAKE, Minnesota, Respondent.**

No. C4–93–843.

Court of Appeals of Minnesota.

Nov. 9, 1993.

Bruce P. Brostephan, Therese M. Dosch, Leslie E. Scott, Minneapolis, for relator.

Margaret Treuer, Bemidji, for respondent.

Considered and decided by CRIPPEN, P.J., and RANDALL, and HARTEN, JJ.

## OPINION

RANDALL, Judge.

On September 9, 1974, relator Delores Cloud was hired by respondent Independent School District No. 38, Red Lake, Minnesota, for the full time position of the "Title V Indian Education Program Project Coordinator/Director." In March of 1993, respondent voted to reduce the Title V Coordinator/Director position to half time effective the 1993–94 school year. Relator requested a hearing. Respondent refused to grant relator a hearing on the grounds she is not a teacher as defined in Minn.Stat. § 125.12, subd. 1 (1992).

By writ of certiorari, relator seeks reversal of respondent's actions and seeks reinstatement. She claims respondent's decision was arbitrary, unsupported by substantial evidence and based upon an erroneous theory of law. In the alternative, relator asks this court to remand this case, directing respondent to conduct a hearing pursuant to Minn. Stat. § 125.12, subd. 4 (1992). We affirm.

## FACTS

The qualifications for relator's position of Title V "Project Coordinator/Director" are a high school diploma, two years administrative experience, and two years of bookkeeping and accounting. A preference is given to applicants bilingual in Ojibwe language. The job description provides that the person in the position of Coordinator/Director will be responsible for the "organization, direction

and coordination of the 'Project,'" and it lists twelve duties, all of which are administrative in nature:

1. Establish and maintain a sound organizational structure.
2. Coordinate program activities within the school district.
3. Maintain available financial records necessary for the program in accordance with the rules and regulations and accounting principles.
4. Prepare work schedule for staff.
5. Responsible for recruiting and providing in-service training for staff.
6. Ability to work with other agencies and institutions.
7. Prepare application based on the needs assessment.
8. Prepare long range goals which meet the culturally related and educational needs of children in the district.
9. Responsible for maintaining physical resources.
10. Responsible for all correspondence, reports, etc., as related to the program.
11. Supervise and manage personnel.
12. Coordinate and implement Evaluation plan.

On the other hand, the duties and responsibilities listed in the job description for a Title V "American Indian Studies Instructor" are not administrative in nature, but rather, closely relate to classroom instruction.[1]

Relator was hired in 1974 and reapplied for the position in 1977, 1978, and 1979. The Title V program was administered by relator separately from other District education programs for a number of years. In July of 1990 the school board became concerned about its liability for the program based in part on the fact that relator had not negotiated a contract with the Board of Education for several years. The board passed a resolution to take control of the program. As part of that resolution, the school board directed that relator negotiate an annual contract.

In her affidavit relator states that over the 19 years of her employment with the school district, she has "frequently taught students in the classroom." She also states classroom instruction is an important aspect of her job in that it enables her to tailor the program and skills of the other staff to the needs of the students.

However, the evidence in the file indicates relator has never been assigned to teach and has not taught in the classroom. The affidavits of the superintendent (and former principal) in the district, two principals in the district, the special services director of the district, and the chairperson of the board state relator was not assigned to teach and never taught in the classroom. Relator's name does not appear on the teacher seniority lists for the years of 1988 through 1993. The file contains documents showing relator's participation in Public Employees Retirement Association (as opposed to the Teachers Retirement Association) for the years of 1980–1988.

In 1991 relator's name did appear on a list of eligible voters for a secret ballot election to determine whether employees desired to be exclusively represented by either Red Lake Education Association or the Red Lake Federation of Teachers for the purpose of collective bargaining. However, the affidavit of Judy Roy, chairperson of the school board, shows the board did not participate in the election and did not furnish or authorize the voter list. Relator's name does not appear

---

1. The duties and responsibilities listed in the job description for a Title V "American Indian Studies Instructor" are:
    1. Keep careful records of student participation.
    2. Maintain close contact with Title V Office.
    3. Evaluate and document the effective and noneffective methods of instruction.
    4. Be innovative as classes progress.
    5. Administer tests for evaluation plan.
    6. Encourage students to work cooperatively and independently.
    7. Be responsible for coordinating evaluation plan.
    8. Update instructional materials.
    9. Must be able to prepare tests, quizzes, and curriculum units.
    10. Maintain on-going research activities.
    11. Write or translate Ojibwe (Chippewa) legends and myths.
    12. Able to narrate Ojibwe (Chippewa) legends and myths.
    13. Other duties as assigned.

on the list of teachers for whom the teachers' union was negotiating a salary and other benefits for school years 1991–92 and 1992–93.

In October of 1991, the union filed a grievance on behalf of relator under the teachers' master agreement. The grievance arose out of the district administration's refusal to permit payroll deduction for union dues for relator. The district's refusal to do so was on the grounds that relator was not a teacher. Neither relator nor the union pursued the grievance procedure beyond the level of the superintendent.

Relator currently holds a license in American Indian Language and Culture. The license was issued to relator on April 30, 1990, and expires in 1995. Relator also held a license from October of 1976 through October of 1977. However, relator did not hold a license any other time she was employed by the school district.

## ISSUE

Is relator a "teacher" within the meaning of Minn.Stat. § 125.12, subd. 1 (1992), so as to qualify for a hearing?

## ANALYSIS

█ On appeal by writ of certiorari a school board's decision may be set aside only if the decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence, not within the school board's jurisdiction, or is based upon an erroneous theory of law. *Kroll v. Independent Sch. Dist. No. 593*, 304 N.W.2d 338, 342 (Minn.1981); *Schmidt v. Independent Sch. Dist. No. 1 Aitkin, Minnesota*, 349 N.W.2d 563, 565–66 (Minn.App.1984).

The parties agree that a school employee who is a "teacher" as defined in Minn.Stat. § 125.12, subd. 1, is entitled to a number of procedural and substantive rights, including a hearing before an independent hearing examiner prior to demotion or termination. The parties disagree, however, as to whether relator is a teacher.

██ Whether an employee is a teacher for purposes of the tenure statutes can be determined as a matter of law, even in the

absence of a hearing. *See Frye v. Independent Sch. Dist. No. 625*, 494 N.W.2d 466 (Minn.1992). That is, adequate appellate review of a school board decision is not dependent upon whether there was a hearing. *Dokmo v. Independent Sch. Dist. No. 11*, 459 N.W.2d 671, 675–76 (Minn.1990).

> A court acts in an appellate capacity by reviewing the school board's *record*, whatever that record might be, *regardless of whether a hearing was provided below.*

*Id.* at 675 (emphasis in original). The school board bears the burden of making an adequate record to prove its actions were justified. *Id.* at 676. Here, we conclude there is substantial support in the record to support the school board's actions.

Minn.Stat. § 125.12, entitled "Employment; Contracts, Termination," defines a teacher:

> A principal, supervisor, and classroom teacher and any other professional employee *required to hold a license* from the state department shall be deemed to be a "teacher" within the meaning of this section. A superintendent is a "teacher" only for purposes of subdivision 2 and 14.

Minn.Stat. § 125.12, subd. 1 (emphasis added).

Under Minn.Stat. § 125.05, subd. 1(a) (1992), the board of teaching is authorized to license "teachers" as defined in Minn.Stat. § 125.03, subd. 1 (1992), except for supervisory personnel, as defined in section 125.03, subd. 4 (1992).

Minn.Stat. § 125.03, subd. 1, provides:

> The term "teachers" for the purpose of licensure, means all persons employed in a public school or education district or by an ECSU as members of the instructional, supervisory, and support staff including superintendents, principals, supervisors, secondary vocational and other classroom teachers, librarians, counselors, school psychologists, school nurses, school social workers, audio-visual directors and coordinators, recreation personnel, media generalists, media supervisors, and speech therapists.

The board of teaching's rules for licensure of teachers of American Indian language and culture are contained in Minn.R. 8700.5200 (1991), which provides in part:

Subpart 1. Issuance of license authorized. The Board of Teaching shall, in accordance with Minnesota Statutes, section 126.49 and the provisions of this part, authorize the issuance of a license to teach an American Indian language and/or an American Indian history and culture to any person who has achieved and demonstrated competence in an American Indian language and/or knowledge and understanding of an American Indian history and culture.

Subpart 2. Teachers without a license. *Nothing in this part shall prohibit a school board from employing a person to teach an American Indian language and/or an American Indian history and culture who does not hold a license authorized by this part.*

(Emphasis added).

■ Thus, under Minn.R. 8700.5200, subpt 2, a person may teach American Indian language and culture without a license. Even assuming relator was teaching in the classroom, as she asserts, she was not required by the state department to hold a license. Because relator was not "required to hold a license," she does not fit the statutory definition of a teacher. *See* Minn.Stat. § 125.12, subd. 1; *see also Krug v. Independent Sch. Dist. No. 16*, 293 N.W.2d 26, 30 (Minn.1980) (because a school nurse was required to hold a license, she was a teacher pursuant to Minn.Stat. 125.12, subd. 1).

Citing *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 346 N.W.2d 389 (Minn.App.1984), relator argues that whether she is a teacher depends on her actual job functions, versus whether she is required to have a teaching license. However, that decision was reversed on appeal by the Minnesota Supreme Court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527 (Minn.1985). *Hibbing Educ. Ass'n* was a unit determination case involving

the interpretation of Minn.Stat. § 179A.03, subd. 18 (1994), (part of the Public Employment Labor Relations Act (PELRA)) which defines a "teacher" as a public employee "in a position for which the person *must be licensed* by the board of teaching or the state board of education." (Emphasis added). The supreme court held that under the PELRA, the fact that paraprofessional teaching aides were not required to be licensed as teachers, regardless of their actual job functions, established that they were not "teachers" within the meaning of PELRA and, therefore, a separate bargaining unit was appropriate. *Id.* at 529–30.

Section 125.12, subd. 1, the section here at issue, defines "teacher" in a similar manner to the PELRA definition of teacher:

A principal, supervisor, and classroom teacher and any other professional employee *required to hold a license* from the state department shall be deemed to be a "teacher" within the meaning of this section.

Minn.Stat. § 125.12, subd. 1 (emphasis added). The language used in subdivision 1 of section 125.12 is similar to the language used in section 179A.03, subdivision 18. As such, respondent argues Minn.Stat. § 125.12, subd. 1, must be interpreted the same way as the PELRA definition of teacher, which the court interpreted as leaving no room for consideration of actual job function in determining whether one is a teacher for purposes of PELRA. *Hibbing Educ. Ass'n*, 369 N.W.2d at 530.

However, the court noted that cases decided under the tenure act for cities of the first class *did* focus on job function because the Act, at Minn.Stat. § 125.17, subd. 1, defines the term "teacher," for the cities of the first class, to include "every person regularly employed * * * to give instruction in the classroom * * *." *Hibbing Educ. Ass'n*, 369 N.W.2d at 530. Although this case involves the interpretation of Minn.Stat. § 125.12, subd. 1, which defines the term "teacher" for cities not of the first class,[2] the court has stated that

---

**2.** For legislative purposes, cities having more than 100,000 inhabitants are defined as cities of

the first class. *See* Minn.Stat. § 410.01 (1992).

the legislature intended to protect teachers in cities of the first class to the same extent as those teaching in cities not of the first class.

*Berland v. Special Sch. Dist. No. 1,* 314 N.W.2d 809, 812 (Minn.1981).

In *Frye,* 494 N.W.2d at 469, the supreme court held that administrators, directors, and supervisors primarily involved in the superintendency of the school district, positions "far removed from the classroom," are not teachers within the meaning of the tenure act. The court defined the term "teacher" as "a position (whatever may be the title) which involves close proximity to and substantial direct involvement with classroom instruction." *Id.* at 468. However, *Frye* was interpreting the statute as it applies to cities of the first class under Minn.Stat. § 125.17, subd. 1. As noted, the definition of "teacher" in the portion of the tenure act that applies to cities of the first class, Minn.Stat. § 125.-17, subd. 1, is different than the definition of "teacher" contained in the portion of the statute that applies to cities not of the first class, Minn.Stat. § 125.12, subd. 1.

■ Even if we look at relator's actual job functions to determine whether relator was a "teacher" within the meaning Minn.Stat. § 125.12, subd. 1, the record supports respondent's conclusion that relator was not a classroom teacher. The only evidence that relator did any classroom teaching is relator's affidavit. This evidence is contradicted by the affidavits of the superintendent (and former principal) in the district, two principals in the district, the special services director of the district, and the chairperson of the Board. Further, unlike teachers, relator reapplied for her position in 1977, 1978, and 1979. In 1990, the board directed her to negotiate an annual contract. Her name does not appear on teacher seniority lists, and she did not hold a license during most of her employment with the district. The job description for relator's position, "Project Coordinator/Director" of the Title V Indian Education Program, contains only duties and responsibilities that are administrative in nature. Additionally, the Title V Indian Education Program itself appears to make a distinction between administrative coordinator/director positions like relator held and classroom teachers. The teachers are called "instructors." The job description for the instructors does contain duties and responsibilities that relate to classroom instruction. Looking at the record as a whole, we find substantial evidence supporting respondent's conclusion that relator is not a classroom teacher.

■ Relator also argues she is a "supervisor," thereby qualifying as a "teacher" within the meaning of the statute:

A principal, *supervisor,* and classroom teacher and any other professional employee required to hold a license from the state department shall be deemed to be a "teacher" within the meaning of this section. * * *

Minn.Stat. § 125.12, subd. 1.

Minn.Stat. § 125.12, subd. 2 (1992), provides in part that "[c]ontracts for teaching or *supervision of teaching* can be made only with qualified teachers." (Emphasis added). Minn.Stat. § 125.04 (1992) defines a "qualified teacher" as

one holding a valid license, as hereinafter provided, to perform the particular service for which employed in a public school.

Under Minn.Stat. § 125.05, subd. 1(b) (1992), the state board of education is authorized to license "supervisory personnel" as defined in Minn.Stat. § 125.03, subd. 4, which provides:

"Supervisory personnel" *for the purpose of licensure* means superintendents, principals, and professional employees who devote 50 percent or more of their time to administrative or supervisory duties over other personnel, and includes athletic coaches.

(Emphasis added.) Minn.R. 3510.8200 (1991) provides:

Supervisory and consultative personnel: includes elementary and secondary school supervisors, consultants, *directors, coordinators* and others with similar functions or levels of responsibility. Supervisory and consultative personnel in the elementary and secondary schools, not licensed under other specific rules for personnel with such

levels of responsibility in particular areas, *shall* hold a license based upon major work in the area where licensure is sought as outlined in part 3510.8300.

(Emphasis added.)

Although relator currently holds a license to teach American Indian Language and Culture, she does not hold a license pursuant to Minn.R. 3510.8200.[3] Therefore, she is not "qualified" to hold her position and may be terminated or demoted in the absence of a hearing. *See In re the Demotion of Dillenberger*, 486 N.W.2d 17, 20–21 (Minn.App. 1992).

## DECISION

We affirm the actions of the school board. The record supports its conclusion that relator is not a "teacher" within the meaning of Minn.Stat. § 125.12, subd. 1, either by job function or by licensure.

To qualify for tenure and other procedural rights under the supervisory statute, relator would have to hold a supervisor's license, which she does not. Under either job title, teacher or supervisor, the school board properly found relator was not entitled to a hearing.

**Affirmed.**

---

**3.** Supervisory, coordinator, or director licensure requires completion of a master's degree or a graduate school statement certifying that the applicant has completed at least one-half of a program leading to the specialist or doctorate degree. *See* Minn.R. 3510.8300. Relator does not qualify.